[Civ. No. 15610. Second Dist., Div. One. Feb. 21, 1947.]

M. JACKMAN et al., Appellants, v. JACK A. MAU, Respondent.

Bachrack & Keilsohn and Herman A. Bachrack for Appellants.

Bertram H. Ross for Respondent.

WHITE, J.—Plaintiffs appeal from an adverse judgment in action for an injunction to restrain defendant from using the name "Jackmau of Hollywood" in connection with his business, upon the ground that such name conflicts with plaintiffs' prior established trade names, devices and labels, injured plaintiffs in their business, their good will and reputation, and misled, confused and deceived the public.

At the trial, it was established by stipulation or testimony that plaintiffs are copartners, conducting a manufacturing business under the fictitious name of "M. Jackman & Sons." This partnership manufactures men's and women's wearing apparel and sells and distributes the same at wholesale to retail stores in the State of California and throughout the United States.

Prior to 1930, plaintiff M. Jackman was engaged in the manufacturing of formal wearing apparel, but since 1930 the business conducted under the name of "M. Jackman & Sons" has consisted chiefly in the manufacture of sportswear and leisure clothes.

In connection with their business plaintiffs used, and have used since 1930, distinctive trade names, labels, letterheads and devices incorporating the written signature of plaintiffs Jackman in the following manner and style: "Jackman." In 1944, plaintiffs incorporated in certain of their labels, letterheads and devices the written signature of plaintiff M. Jackman in the manner following: "Jackman from California." Plaintiffs also used the designation on some of their sportswear, as well as on all the formal wear manufactured by them, "Jackman of Hollywood."

In their complaint, plaintiffs alleged that they had expended large sums of money in advertising their manufactured products, and the name "Jackman"; that in the year 1945, between $25,000 and $35,000 was so expended, while the budget for advertising for the year 1946 was between $35,000 and $45,000.

In September, 1945, the defendant, whose true name is Jack Mau, and who is also known as "Jack A. Mau," opened a store at 139 East Seventh Street in the city of Los Angeles, for the sale at retail of men's and women's wearing apparel and for the rendering of cleaning, pressing and alterations services. Plaintiffs' place of business is located at 309 East Eighth Street, which, like that of respondent, is in the down town garment manufacturing district of the city of Los Angeles, approximately three blocks away from defendant's place of business, but in the same general area.

Defendant advertises his place of business by signs over his store, on letterheads and business cards, using the device of joining together his first and last name in written signature in script form and adding the words "of Hollywood" after said name, making it read in its entirety, "Jackmau of Hollywood."

The articles of men's and women's wearing apparel manufactured and sold by plaintiffs are known to the public, and to the buyers and consumers thereof, by the trade names, labels and devices, "Jackman" and "Jackman of Hollywood."

Respondent offers for sale and sells the same type of sportswear and leisure clothes as has been and is being manufac-

tured by plaintiffs. The retail price range for the merchandise of the respective parties was shown to be as follows:

| Merchandise | Plaintiff | Defendant |
|---|---|---|
| Sports Jackets ...From $29.50 | | $24.50 |
| Sport Shirts......From $15.00 | | $ 7.95 |
| Slacks .........From $17.50 | | From $14.50 to $16.50 |

On October 20, 1945, plaintiffs made a demand upon defendant to desist and discontinue using, in connection with his business, the trade name and design "Jackmau of Hollywood." Defendant refused to discontinue the use of said name, but offered to change the name as requested by plaintiffs on condition that the latter bear the expense of such change, which offer was refused by plaintiffs.

It was established at the trial, and in fact admitted by defendant himself, that following the commencement of his business operations, at least a half dozen customers had come into his store and asked for sportswear manufactured by "Jackman." Two buyers for retail stores dealing with plaintiffs observed the name and manner in which defendant's name appeared upon his place of business and believed that it was plaintiffs' store. Mail intended for the defendant and addressed to him as "Jackmau," was delivered by the Post Office Department to plaintiffs.

The trial court found that plaintiffs used and adopted the trade names and devices, "Jackman from California" and "Jackman of Hollywood," which have been advertised by plaintiffs throughout the United States in connection with the goods manufactured by them in the city of Los Angeles.

The court, however, found that plaintiffs do not manufacture any merchandise, nor do they transact any business in Hollywood; that plaintiffs manufacture their merchandise and do business wholly from 309 East Eighth Street, Los Angeles, which is in the wholesale and manufacturing district of the city of Los Angeles.

The court further found that plaintiffs have spent large sums of money in advertising the wearing apparel manufactured by them through various advertising media, and that they have used the trade names and devices, "Jackman from California" and "Jackman of Hollywood" in connection with the sale of their merchandise; that plaintiffs' merchandise is known under the name of "Jackman" by department store

buyers and by a certain portion of the public that purchases and wears plaintiffs' merchandise.

The court also found that defendant's true name is Jack Mau; that he also used the name of "Jack A. Mau"; that in September of 1945, he opened a store at 139 East Seventh Street in the city of Los Angeles, for the sale at retail of men's and women's apparel, and for the rendering of cleaning, pressing and alterations services. The court further found that the defendant has no trademark, uses no labels, but does use his own name in front of his place of business and on the windows thereof, running his first and last name together, and displays the name over his place of business, "Jackmau of Hollywood."

It was further found by the court that, because plaintiffs have never manufactured or sold goods in Hollywood, and at all times have manufactured their goods at 309 East Eighth Street in the city of Los Angeles, which is not in that portion of the city commonly known and designated as "Hollywood," they are deceiving the public in using said trade name and device, "Jackman of Hollywood."

Finally, the court found "that it is untrue that the use of the name 'Jackmau of Hollywood' is so similar to the trade name of plaintiffs 'Jackman from California' that it is calculated to deceive the purchasers and consumers of plaintiffs' articles and/or the public in general. That there is not sufficient similarity in the trade name 'Jackman from California,' used by plaintiffs, and that of 'Jackmau of Hollywood,' used by defendant, to deceive the public."

That a property right attaches to a trade name which has been used for a number of years to identify and designate the business conducted, has long been the law in California. In the instant case there is no denial that the trade names "Jackman," "Jackman from California"; and "Jackman of Hollywood" have been used by plaintiffs for a number of years to designate the business which they were conducting. Under such circumstances, the law recognizes and will protect the property right which attaches to the name (*Ward-Chandler Bldg. Co.* v. *Caldwell*, 8 Cal.App.2d 375, 377 [47 P.2d 758]). Another element involved in cases of this character is the watchfulness of the law in protecting the public from the fraud or deceit resorted to by a pretender to falsely lead the buying public to believe that they are purchasing

the goods of the merchant who, through a trade name and honest effort, has established a reputation and public demand for his product (*Carolina Pines, Inc.* v. *Catalina Pines,* 128 Cal.App. 84, 87 [16 P.2d 781]). ▮ And the fact that defendant was using his own name does not shield him from injunctive action if such use is calculated to cause confusion or to deceive. As was said in *Hoyt Heater Co.* v. *Hoyt,* 68 Cal.App.2d 523, 527 [157 P.2d 657], "One must use his own name honestly and not as a means of pirating the goodwill and reputation of a business rival; and where he cannot use his own name without inevitably representing his goods as those of another he may be enjoined from using his name in connection with his business." ▮ Also, it is not necessary as a prerequisite to obtaining equitable relief in cases of this character that the names be identical. It is sufficient if though not identical they are sufficiently similar as to cause confusion and injury (*Academy of Motion Picture Arts & Sciences* v. *Benson,* 15 Cal.2d 685, 692 [104 P.2d 650]). In the case just cited, (p. 692) the Supreme Court quotes with approval the following rule enunciated in the case of *Celluloid Mfg. Co.* v. *Cellonite Mfg. Co.,* 32 F.94, at page 97 : "Similarity, not identity, is the usual recourse when one party seeks to benefit himself by the good name of another. What similarity is sufficient to effect the object has to be determined in each case by its own circumstances. We may say, generally, that a similarity which would be likely to deceive or mislead an ordinary unsuspecting customer is obnoxious to the law."

▮ Appellant first challenges as not supported by the evidence and as being directly contrary thereto, finding No. 8, reading:

"That it is untrue that the use of the name 'Jackman of Hollywood' is so similar to the trade name of plaintiffs, 'Jackman from California', that it is calculated to deceive the purchasers and consumers of plaintiffs' articles and/or the public in general that there is not sufficient similarity in the trade name 'Jackman from California' used by plaintiffs and that of 'Jackman of Hollywood' used by defendant to deceive the public."

We find ourselves in accord with this contention of appellants. The exhibits, consisting of photostatic copies of the business cards of the respective parties, photographs of the

advertising signs utilized by appellants, and the signs used by respondent on the front of his place of business, have been brought here on this appeal. They bear out appellants' claims that respondent adopted the firm name, label and device ''Jackmau of Hollywood'' in imitation of appellants' firm name, label and device. An inspection of the exhibits shows the most marked similarity of appearance between the respective names. By using the name ''Jackmau'' in script form as he did, respondent creates a similarity with appellants' name, the difference in which is indistinguishable except upon minute examination. That the law will afford protection against the unfair competition of one who seeks by imitation of a trade name, or by other artifice, to induce persons to deal with him in the belief that they are dealing with another, is of course well settled. This doctrine rests on the basis of fraud and may be invoked when there is present an intent to deceive, or the doing of things reasonably likely to deceive. In a case such as the one now before us it is not necessary, in order to establish an invasion of appellants' right, that the imitation of their trade name be identical for, as heretofore quoted from the case of *Academy of Motion Picture Arts & Sciences* v. *Benson, supra,* ''Similarity, not identity, is the usual recourse when one party seeks to benefit himself by the good name of another.'' Having in mind the rule that what similarity is sufficient to effect the object has to be determined by the circumstances of each case, we find in the instant case that the photographs and photostats furnish a practical demonstration of sufficient similarity to induce confusion or deception. That such confusion did ensue is further shown by respondent's admissions that, in several instances, customers entered his store asking for merchandise manufactured by appellants. Added to this is the testimony of Jay Harvey, a buyer for Brown's Wearing Apparel Store, a firm that purchases articles of sportswear from appellants. With reference to respondent's store, this witness testified:

''Well, on my way to the wholesale district on Los Angeles Street, many times I go up Seventh Street; I saw this store and a sign, and thought it was an outlet of Jackmans', and I called them about it.''

Upon further interrogation, the witness testified:

''Q. When you looked at this sign, then, you thought that Jackman had opened a retail store and outlet?

"A. I thought it was—it looked like 'Jackman of Holly-wood' to me."

Maurice J. Hibler, buyer and manager of Desmond's six stores in California, testified:

"Q. I show you plaintiffs' Exhibit number 6 which consists of three photographs of the store of the defendant located at 139 East Seventh Street, Los Angeles, and ask you if you have ever personally observed the front of that store?

"A. Yes, I did, about, sometime I believe in the early part of December; I was walking down Seventh Street on the opposite side of the street, and I noticed the sign and noticed the similarity of the signature—at first I was amused because I didn't think it was possible that Jackman would operate a retail store; and the next time I visited Jackmans' I learned that there was no connection whatsoever.

"Q. Then when you saw this sign on the front did you actually think that that read 'Jackman'?

"A. Yes, I definitely did."

Then there was the testimony of the confusion created in the post office through delivery of some of respondent's mail to appellants.

That the trial judge shared the belief that the similarity in the names with which we are here concerned would reasonably lead to confusion and deception is manifested by what he said in announcing his decision at the close of the trial. We quote from the reporter's transcript:

"I will say this, as far as the two signs are concerned; that when they are using script I think the majority of people would be confused; that when they are in the business or custom of buying this sort of goods, while I don't know anything about it, I am satisfied from the testimony given, particularly that of the manager of Desmond's, that Jackman's is a name that is well known in the trade, and a 'u' and an 'n' as written will be confused time and again, especially if anybody writes as the Court does; they take my 'u's' for 'n's' and 'n's' for 'u's', I know."

When, however, appellants refused to waive findings, the court did say:

"I want it clear, Mr. Ross, that the Court does not believe, in spite of the similarity of sign, that the public that deal with Jackmans'—with the plaintiff—is likely to be deceived by the sign now used by the defendant Jack Mau."

242

We search the transcript in vain for any contradiction of the foregoing testimony, and are therefore led to the conclusion that the evidence does not support the questioned finding but in fact is directly contrary thereto.

 Respondent, however, urges that the parties herein are not engaged in competitive businesses; that appellants are manufacturers who sell and distribute their goods at wholesale through retail stores, while respondent operates a single store for the sale at retail of men's wearing apparel and for the rendition of cleaning, pressing and alterations services. Therefore, argues respondent, he not being engaged in a business which competes with that of appellants, the use by him of appellants' trade name does not impinge upon the latter and cannot be characterized as unfair competition. While it is true that most of the cases dealing with unfair competition are concerned with instances in which the respective parties are engaged in business directly competitive, nevertheless, as said in *Academy of Motion Picture Arts & Sciences* v. *Benson, supra,* at page 689: ''But we perceive no distinction which, as a matter of law, should be made because of the fact that the plaintiff and defendant are engaged in noncompeting businesses.'' The true test is—has the defendant ''adopted a name which *prima facie* is broad enough in its concept to be mistaken by the ordinary unsuspecting person for the institution created by the incorporators of the plaintiff.'' (*Academy of Motion Picture Arts & Sciences* v. *Benson, supra,* p. 691.)

In the case at bar, one element of deception that might go abroad in mercantile circles is that appellants are engaged in the retail business in direct competition with the retailers to whom appellants sell at wholesale. In fact, as hereinbefore noted, the buyer and manager for Desmond's testified, ''. . . I didn't think it was possible that Jackman would operate a retail store.'' The witness Jay Harvey, a buyer for Brown's Wearing Apparel Store, testified that when he observed respondent's store and the type of name thereon, he ''. . . thought it was an outlet for Jackman's and I called them about it.'' Equity will not countenance the use by respondent of the trade name ''Jackmau,'' written in script form and similar to the manner in which appellants' long possessed trade name is written because respondent may thereby reasonably confuse and deceive the buying public into the belief that his is a ''Jackman'' retail store.

The case of *Alhambra Transfer etc. Co.* v. *Muse*, 41 Cal. App.2d 92 [106 P.2d 63], relied upon by respondent, is not helpful. In that case the holding was that the trade name used by plaintiff was not susceptible under our law of exclusive use. No such question is here involved. The only other case cited by respondent on the question immediately under discussion is *Nolan Bros. Shoe Co.* v. *Nolan,* 131 Cal. 271 [63 P. 480, 82 Am.St.Rep. 346, 53 L.R.A. 384]. As to that case we find ourselves in accord with the views expressed by the court in *W. & H. Walker* v. *Walker Bros. Co.,* 271 F. 395, 398 (CCA Mass.), wherein it was said: "If the California case (Nolan Brothers, 131 Cal. 271, 63 P. 480, 53 L.R.A. 384, 82 Am.St.Rep. 346) means that a concern may not extend its business, under its own name, from retail to wholesale, we should not be disposed to follow it. But, whether that case is unsound or not, it had reference to a wholesale business which had been suspended, and where a name was sought to be established in respect to a new and another kind of business."

█ Appellants next direct their attack to finding No. 7 as not being supported by the evidence. It reads as follows: "That plaintiffs in using the trade name 'Jackman of Hollywood' are deceiving the public in using said trade name and device, in that plaintiffs have never manufactured or sold goods in Hollywood or done business from Hollywood and that at all times plaintiffs have manufactured their goods and carried on their business from 309 East 8th Street in the city of Los Angeles, which is not in that portion of the city commonly known and designated as 'Hollywood.' "

The view of the trial judge which gave rise to this finding was expressed by him when, at the conclusion of the trial, in announcing judgment for the defendant, he said: "Judgment is for the defendant, on the grounds that the plaintiff does not come into court with clean hands; that he himself is deceiving the public by his advertising of a type that he complains is also being done by the defendant."

But the main, if not the only, serious objection appellants urged against respondent was his use of the name "Jackmau" in script form so that it was similar to appellants' trade name of "Jackman," and thereby confusing and deceiving prospective buyers and misleading the public into believing that respondent was retailing goods manufactured by appellants.

Indeed, by finding No. 5 the court found, "That plaintiffs' merchandise is known under the name of 'Jackman' by department store buyers and by certain portions of the public that purchases and wears plaintiffs' merchandise." This finding, supported as it was by competent and substantial evidence, negatives the questioned finding that the value of appellants' trade name was dependent upon any geographical appendage it might carry.

It is also noteworthy in regard to the challenged finding No. 7 that not a scintilla of evidence was produced to show that anyone was deceived through appellants' use of the designation "of Hollywood." It is axiomatic that a charge of deception, which is but another term for fraud, must be proven. In the absence of any evidence whatsoever that the inclusion in appellants' trade name of the designation "of Hollywood" adds anything whatever to the representations of the quality of the manufactured merchandise or the manufacturing firm's reputation, or that in adopting the words "of Hollywood" someone has been deceived and defrauded or is likely to be deceived or defrauded, appellants cannot be held guilty of deception as a matter of law (*Scandinavia Belting Co.* v. *Asbestos & Rubber Works*, 257 F. 937, 959 [169 C.C.A. 87]).

Undoubtedly, the trial judge's decision was in great part influenced by the belief that, as stated by him, "The plaintiff does not come into court with clean hands." This assumption was, as stated by the court, predicated on the fact that appellants were not manufacturing their goods in Hollywood, but there is no evidence that appellants' use of the phrase "of Hollywood" was intended to or did imply that the goods were manufactured in Hollywood. Standing alone, "Hollywood" is a geographical name, and its use in connection with the manufacture of merchandise may be descriptive either of origin, quality or style. There was no proof that appellants represented that their sportswear was manufactured in Hollywood. ■ In any event, the court will take judicial notice of the fact that Hollywood is not a separate municipality or geographical entity, but is merely a district within the city of Los Angeles. Undoubtedly, it is true that he who comes into equity must come with clean hands, but we fail to perceive in the evidence any testimony that because appellants adopted the designation "of Hollywood" anyone has been deceived or defrauded or is likely to be deceived or defrauded. There

being no testimony that appellants were guilty of willful misconduct, fraud or deception in regard to the matter here in litigation, the courts of chancery are open to them for the redress of any wrongs allegedly inflicted upon them.

The judgment is reversed and the cause remanded for a new trial in conformity with the views herein expressed.

York, P. J., and Doran, J., concurred.