[Civ. No. 15384. First Dist., Div. Two. Sept. 4, 1953.]

HARRY KARSH et al., Appellants, v. GEORGE P. HAIDEN et al., Respondents.

Theodore Golden, J. Bruce Fratis and Robert N. Stefan for Appellants.

Harry M. Gross for Respondents.

NOURSE, P. J.—This is an action of unfair competition in connection with an agreement transferring a business formerly operated by defendant George P. Haiden with its goodwill and firm name to plaintiffs. All findings were indiscriminately for defendants, and plaintiffs, appealing from the adverse judgment, contend that they are not supported by the evidence, whereas respondents urge that the denial of relief is justified on the facts and that insofar as the findings are unsupported they are not decisive of the dispute and are surplusage.

The following facts are mainly undisputed: In the year 1939 defendant George P. Haiden started in San Francisco a pleasure auto wrecking business under the name "Haiden Auto Wrecking." Prior to that time he had since 1910 been in similar business in Oakland, since 1918 under the name "Haiden Auto Parts." On April 14, 1947, Haiden sold the San Francisco business located at 655 Potrero Avenue for $22,500 to plaintiffs by written contract which contained among others the following provisions: "The sale of said

business includes the goodwill thereof, and the right to continue the use of the name 'Haiden Auto Wrecking' in connection with said business. And seller agrees not to engage in the Auto Wrecking business in the City and County of San Francisco, State of California, in competition with buyers, either as proprietor or employee . . . It is understood and agreed that 'Haiden Auto Wrecking' business as sold herein shall apply only to pleasure cars and pleasure car parts, and shall not include or apply to the business of truck wrecking and handling truck parts and used cars and trucks, as now conducted by seller at 777 Potrero Avenue, San Francisco, California." Although the business transferred was located in San Francisco only, it had many customers in Northern California outside San Francisco. Among the active accounts at the time of the transfer were many from customers in Oakland. The names "Haiden Auto Wrecking" and "Haiden" were favorably known in the line of business involved. The right given to the buyers to use the name "Haiden Auto Wrecking" was for the purpose of assisting them in holding to the best of their ability the accounts of the business sold, also those outside San Francisco.

After the sale defendant Haiden continued the truck wrecking business in San Francisco together with defendant Thomas E. Miles under the name "Haiden & Miles Truck Exchange." In January 1949 they acquired the "Karren Auto Wrecking" of 3263 San Pablo Avenue, Oakland which they operated through a corporation, the defendant "Haiden and Miles, Inc." After four or five months they changed the name into "H. and M. Auto Wrecking" under which name they still operate it. After the change of name they advertised their firm in the Oakland telephone directory printing the name H. and M. Auto Wrecking with large letters and adding portrait heads of defendants Haiden and Miles with their names in very small print under them. The head of Haiden was much larger than that of Miles and at the top of the advertisement next to the name of the firm. Next to this portrait and under the name of the firm was in small letters: "40 years Wrecking Experience." In an advertisement in a later edition of said directory there is inserted between the firm name and "40 years wrecking experience" in small letters: "The original Geo. T. Haiden of Haiden Auto Parts." As soon as the first advertisement had appeared plaintiffs received telephone calls asking whether the Oakland place was theirs or who was running each place. (Testimony of plaintiff

Harry Karsh; defendant Haiden testified he thought there was no confusion.) Defendants also used "the original Geo. P. Haiden of Haiden Auto Parts, 40 years Wrecking Experience" in small print on their printed matter which carried in heavy lettering "H. and M. AUTO WRECKING." Later they placed on their roof (on San Pablo) a large sign "The original George P. Haiden and John Miles" and in much smaller letters "H. & M. Auto Wrecking."

Earlier, in November, 1949, plaintiffs had opened a branch yard in Oakland at 6325 San Leandro Boulevard under the name "Haiden Auto Wrecking." Claude Cardwell, the manager of this branch (who previously had been in the employ of defendants when they operated their new Oakland business under the name "Karren Auto Wrecking") testified that after the opening of the yard on San Leandro they received frequent calls for George Haiden, and customers asked whether their San Pablo store would have a part which they did not have in stock or told them that they had been on San Pablo instead of San Leandro. There was received in evidence a letter of the Department of Motor Vehicles to a third party of March 24, 1950, in which it was stated that according to the records of the department Haiden Auto Wreckers no longer operated at 655 Potrero Avenue, San Francisco, but were then located at 6235 (sic) San Pablo Avenue, Oakland.

The evidence further showed that defendants had done no business and had not advertised in San Francisco and that they thought that they were free in the use of the name Haiden outside of San Francisco, that plaintiffs had objected to the use made in Oakland of the name Haiden and that defendants had not objected to the use by plaintiffs of the firm name "Haiden Auto Wrecking" in Oakland. The San Francisco business after the purchase by plaintiffs showed a continuous growth so that the gross volume at the time of the trial was about $250,000 a year. The new business of plaintiffs in Oakland moreover had then a gross annual volume of about $65,000.

The complaint alleged in substance that the stated acts of defendants, particularly the use of the words "The Original Haiden" were intentionally fraudulent, for the purpose of causing confusion between defendant's new business and the business now operated by plaintiffs under the name "Haiden Auto Wrecking" and of appropriating the goodwill of the latter business and also that because of said fraud confusion

and damage were caused. The prayer was in effect for an injunction restraining defendants from using for business purposes the name "George T. Haiden," or "Haiden" or the "Original Haiden" or "Haiden Auto Wrecking" or any colorable imitation thereof without a qualifying statement differentiating the business so indicated from plaintiffs' business under the name "Haiden Auto Wrecking," for an accounting of all the profits of defendants' Oakland business, for damages caused plaintiffs by the use of the name Haiden by defendants and for $10,000 for damages to the goodwill and trade name of plaintiffs' business.

Appellants contend that findings to the following effect are not supported by the evidence: *a.* That the business sold had no valuable goodwill and that neither the names "Haiden Auto Wrecking" nor "Haiden" had a valuable reputation; *b.* that defendants did not operate their business ("H. and M. Auto Wrecking") in competition with plaintiffs' and did not announce to the public that defendant George P. Haiden was part of their firm; *c.* that the acts of defendants were not intentionally fraudulent, nor for the purpose of deceiving plaintiffs' customers into the belief that defendants' San Pablo business was the same as the business of plaintiffs or of filching the goodwill of said business; *d.* that defendants did not represent that George P. Haiden was connected with plaintiffs' business and did not use any artifices to mislead the public as to the identity of plaintiffs' and defendants' establishments; *e.* that no confusion was caused between the establishments of the parties and no business was done with defendants under the belief the transactions were with plaintiffs, and that such would not happen in the future either; *f.* that no damage was done to plaintiffs and that none will result in the future.

It is clear at first sight that the findings succinctly stated by us under *a.* and *b.* are contrary to the evidence stated before. There can be no doubt that the parties are competing for the Oakland business and that in their competition they consider the name Haiden and firm names containing that name as valuable—according to the evidence rightly so. It is also undisputable that defendants not only announced that defendant Haiden was part of their firm but that they actively tried to cash in on defendant Haiden's personal reputation.

However, this in itself is not necessarily unfair. The contract of sale of the business expressly restricted the noncom-

petition clause to San Francisco only. It gave plaintiffs the use of the name "Haiden Auto Wrecking" in connection with the business sold but did not expressly limit defendant Haiden in the use of his own name wherever the contract permitted him to compete. There was no evidence that prior to the sale the old firm used the name Haiden in any other manner than as a part of the firm name "Haiden Auto Wrecking" and no use of the name "Haiden" as such was sold to the plaintiffs. ■ The elements of the goodwill personal to the seller do not pass to the purchaser of the business. "The personal experience, skill and reputation of the seller remains his, and cannot pass as a part of the goodwill of a business." (I Nims, Unfair Competition and Trade-Marks, 4th ed., p. 95.) ■ The right to use one's own name in business may be given up by contract, but in the absence of express language to that effect the intention to part with that right will not be presumed. (I Nims, *supra,* pp. 110-111; 3 Callmann, Unfair Competition and Trade-Marks, 2d ed., p. 1326; 63 C.J. 437-438.) By the limited extent of the injunction prayed for plaintiffs themselves recognized that defendant Haiden had not generally given up his right to use his own name and reputation in the car wrecking business outside of San Francisco.

■ However the seller of a business and goodwill may not use the firm name he has assigned or another similar firm name likely to cause confusion and he must avoid the appearance of continuing the business sold, or of being its successor. He may not in any way cause confusion between his new business and the one operated by the purchaser under the contract of sale or detract from the goodwill he has sold. (I Nims, *supra,* pp. 106-108; 2 Callmann, *supra,* pp. 964-966; see, also, 24 Am.Jur. 816; 38 C.J.S. 955.) ■ Violation of said duties is open to injunction (24 Am.Jur. 819; 38 C.J.S. 963; 43 C.J.S. 566, 570; *Spieker* v. *Lash,* 102 Cal. 38, 45 [36 P. 362]) and is often considered unfair competition (2 Callmann, *supra,* p. 967). ■ The seller who goes again into business after having sold the goodwill of an establishment to which his name was linked is not in the same position as a person who newly enters a line of business in which a firm which accidentally makes use of the same name has gained a reputation. The seller's contractual relation to the purchaser implies an obligation "of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." (*Brown*

v. *Superior Court,* 34 Cal.2d 559, 564 [212 P.2d 878] ; *Wilson* v. *Wilson,* 96 Cal.App.2d 589, 595 [216 P.2d 104] and cases there cited.) Therefore the rule, often held applicable to accidental similarity of personal names in business and urged by respondents in this case, that every man in the absence of proved fraud or misleading artifices has the absolute right to use his own name, even though he may interfere with and injure the business of another, (see, for instance, *Ida May Co., Inc.* v. *Ensign,* 20 Cal.App.2d 339, 344 [66 P.2d 727]), cannot be applicable to the situation before us.

█ The findings negativing intentional fraud and misleading artifices (stated herein under *c.* and *d.*) could by reasonable inference be based on the evidence, considering the absence of competition by defendants in San Francisco and the prominence given by them to the firm name "H. and M. Auto Wrecking" and to the name of defendant Miles as a copartner in that business. █ Even if contrary inferences could also reasonably have been drawn we are bound by the decision of the trial court in that respect (*Industrial Indem. Co.* v. *Golden State Co.,* 117 Cal.App.2d 519, 537 [256 P.2d 677].) However these findings are not decisive against the granting of an injunction as prayed for. █ The fact that plaintiffs alleged intentional fraud and misleading artifices as basis of an action of unfair competition does not prevent them from obtaining said injunction without such proof and finding if under the circumstances alleged and proved the injunction is justified on the basis of violation of the obligations of the seller of a goodwill or unfair competition or both. (*Alonso* v. *Hills,* 95 Cal.App.2d 778, 784 [214 P.2d 50] and cases there cited.)

█ It is obvious that for the injunction of violation of contractual obligations as to a sold goodwill, fraud or misleading artifices are not essential and also in the field of unfair competition injunctive relief may be available without such proof, if the conduct is unfair. Section 3369, Civil Code relating to the injunction of unfair competition, includes therein unfair *or* fraudulent business practices and unfair, untrue *or* misleading advertising all in the disjunctive. (*Wood* v. *Peffer,* 55 Cal.App.2d 116, 124 [130 P.2d 220].) In judging the unfairness of the conduct of the defendants who were not parties to the contract of sale their knowledge of that contract and the fact that they will participate in the profits, if any, of the violation, must be considered. (*Fleckenstein Bros. Co.* v. *Fleckenstein,* 66 N.J.Eq. 252 [57 A. 1025, 1028].)

84

■ The crucial findings as to the injunction are therefore those which deny that any confusion between the business of plaintiffs and defendants was caused by the latter (compare *Jackman* v. *Mau,* 78 Cal.App.2d 234 [177 P.2d 599].) If there was proof of such confusion, actually resulting or probably to result from the acts complained of, causing defendants to be considered the same as or the successors of the business sold, then they could be forced by injunction to take reasonable precautions against such confusion by the use of explanatory phrases differentiating their new business from the old one as prayed for. It is not necessary to prove that any individual has been actually confused if such confusion is likely to result. (See *Winfield* v. *Charles,* 77 Cal.App.2d 64, 70 [175 P.2d 69].) We think the evidence supports the presence or likelihood of such confusion and that the contrary findings cannot stand.

■ The evidence of plaintiff Karsh as to the telephone calls received after the first advertisement of H. and M. Auto Wrecking, the letter of the Motor Vehicle Department and the evidence of the witness Claude Cardwell as to questions and statements of customers at plaintiffs' Oakland yard, all stated before, show such confusion. The evidence as to telephone calls and correspondence for defendant George P. Haiden received by plaintiffs is in itself of no importance in that respect as it only shows the too great effectiveness of the assignment of the old firm name to the detriment of defendant Haiden. However it also ilustrates the degree to which the name of George P. Haiden was identified with the old firm and the probability that the prominent use of his name and portrait in connection with defendants' new business would cause confusion. This probability would only be strengthened by the addition of the words "of Haiden Auto Parts" because of its similarity to "Haiden Auto Wrecking." Symptomatic in the latter respect is the testimony of H. L. Haines, an insurance adjuster who used the services of auto wrecking companies since 1927 and who thought that he had heard the name "Haiden Auto *Wrecking* Company" in 1927 and throughout his work since then. (Actually the name had been in use only since 1939 and had been preceded since 1918 in the auto wrecking business by "Haiden Auto *Parts.*") As against the above evidence the testimony of defendant George P. Haiden that he did not *think* there were instances of persons confusing "his particular firm as Haiden Auto Wrecking Company" cannot cause a substantial conflict.

Respondents' contention that appellants are not entitled to protection against confusion as to the assigned firm name in Oakland because respondents started their business in Oakland first is without merit. The evidence shows confusion actual or probable not only with the business of appellants in Oakland but also with the original San Francisco business. Moreover in the goodwill sold was included a large number of Oakland customers. There is nothing in the contract that restricts appellants' rights to the advantages of their patronage to exploitation by means of the original San Francisco business to the exclusion of the opening of a branch office in Oakland itself under the firm name transferred. The duty of defendants to refrain from disturbing the patronage of the Oakland customers remains unaltered. We conclude that the judgment so far as it relates to an injunction must be reversed.

However no reversal is required as to the denial of the further relief prayed for. There was no evidence showing any actual damage suffered by plaintiffs' thriving business or any profit actually derived by defendants from transactions unfairly diverted from that business because of confusion caused by the acts complained of. We have moreover upheld the findings of absence of fraudulent intent and misleading artifices. In matters of unfair competition absence of fraud may be a reason not to impose damages although confusion is caused or threatened (Restatement, Law of Torts, § 745, comment b.) The absence of fraudulent intent justified also the denial of an accounting of profits in equity. (*Wood* v. *Peffer, supra,* 55 Cal.App.2d 116, 125.)

Insofar as the judgment denies an injunction it is reversed, in all other respects it is affirmed. Appellants to have their costs.

Dooling, J., concurred.