[Civ. No. 16446. First Dist., Div. One. Aug. 1, 1955.]

D & W FOOD CORPORATION (a Corporation) et al., Appellants, v. MELBURN E. GRAHAM, Respondent.

Herbert Bartholomew, Naylor & Lassange and James M. Naylor for Appellants.

Peter J. Mancuso for Respondent.

PETERS, P. J.—The trial court refused plaintiff's application to enjoin the defendant from using in connection with

his business the name "Mel's," "Mel's Drive-In" or "Mel's Drive-In and Restaurant." Plaintiffs appeal.

The plaintiffs are the D & W Food Corporation and the Salinas Drive-In Corporation. They own two of a chain of six drive-in restaurants that all operate under unified management and control. All six restaurants use the name "Mel's" "Mel's Drive-In" or "Mel's Drive-In and Restaurant." The first of these six restaurants was opened by the D & W Food Corporation on South Van Ness Avenue in San Francisco in December of 1947. It had filed a certificate of doing business under the name of "Mel's" as a drive-in restaurant in August of 1947. The stock of D & W is owned equally by Harold S. Dobbs and D. M. Weiss, known as Mel Weiss.

In February of 1951 Dobbs and Weiss organized the San Francisco Drive-In Food Corporation, which opened a drive-in on Mission Street in San Francisco in July of 1951. D & W gave its formal consent to this new corporation to use the name "Mel's," "Mel's Drive-In" or "Mel's Drive-in and Restaurant." The San Francisco corporation is not a party to this action.

In August of 1951 Dobbs and Weiss incorporated the Salinas Drive-In Corporation, which is one of the plaintiffs. On October 15, 1951, it commenced construction of a drive-in in Salinas and put up a sign on the premises "Another Mel's Drive-In Restaurant from San Francisco." It opened for business on April 21, 1952.

The defendant Melburn E. Graham, about the first of April of 1952, opened a drive-in restaurant in the town of Morgan Hill under the name "Mel's Drive-In." Morgan Hill is located on the highway between San Francisco and Salinas, being 70 miles south of San Francisco and 36 miles north of Salinas. It will be noted that defendant opened his drive-in after plaintiff D & W had opened its establishment on South Van Ness Avenue in San Francisco, and after the nonplaintiff San Francisco Drive-In Food Corporation had opened its restaurant on Mission Street in San Francisco, and after the other plaintiff had erected a sign on their Salinas property and started construction of the establishment.

To make the story complete, after defendant had opened his drive-in located in Morgan Hill in April of 1952, Dobbs and Weiss incorporated three more corporations to conduct the drive-in restaurant business—one in San Jose, one in Berkeley, and another one in San Francisco. These three new businesses were given formal permission by D & W to use the name

"Mel's," "Mel's Drive-In" or "Mel's Drive-In and Restaurant." Dobbs and Weiss also incorporated a company by the name of "Mel's, Inc.," to act as the central buying agency for the chain of six restaurants. None of the corporations mentioned in this paragraph is a party to this action.

All of the restaurants in the chain have been constructed according to a uniform architectural plan and are operated pursuant to a uniform pattern. They use the same menu containing pictures of all six restaurants, prepare the food served according to the same recipes, and serve it in similar ways. There is one general manager for the chain. The chain advertises by means of radio broadcasts from stations in Monterey, Salinas, San Jose and Berkeley. It also utilizes advertising in newspapers, theaters and school papers throughout the area.

As already pointed out, defendant opened his Morgan Hill establishment after two of the chain of Mel's drive-ins had been opened in San Francisco, and while a third was being constructed in Salinas. The defendant's business is wholly owned and operated by Melburn C. Graham, customarily called "Mel." On his establishment defendant, in block script, displays the word "Mel's," and beneath that name the word "Drive-In." The word "Mel's" on plaintiffs' establishments is also in script. Defendant testified that prior to opening his restaurant he had seen the sign of plaintiffs' on their South Van Ness Avenue establishment, and had tried to make his sign different, or as he said "opposite." The defendant was not a newcomer in the restaurant field. He had worked in the San Jose area in the drive-in restaurant business for about 20 years, and during all this period had been known as "Mel." He had managed the "Five Spot Drive-In" near San Jose and owned the "Easy Restaurant" in the same area. His lease at this last named spot required him to operate under the name of the "Easy Restaurant."

When defendant first opened in Morgan Hill he ran several advertisements in the San Jose papers, and continued for a while his predecessor's radio advertising from a Watsonville station. At the time of trial, in November of 1953, his only advertising was in the Morgan Hill newspaper. In this advertising he added his full name.

When plaintiffs notified him of their objections to his use of the challenged name, defendant added to his menus and matchbook covers "Mel Graham, Proprietor" to show, as he put it, that he "didn't belong to any chain." Defendant has

never claimed any connection with plaintiff's chain, and, on the few occasions when he has been asked whether he is affiliated with plaintiffs, he denied any such association. It is admitted that, because Morgan Hill is on the main highway between San Francisco and Salinas, defendant caters to appreciable numbers of motorists from those two areas.

The trial judge in directing judgment for the defendant filed the following memorandum decision:

"In this matter it seems to be clear that a person may not be enjoined from using his own name in his business, provided he is not guilty of fraud, deceit, or artifice in so doing which causes injury or damage to another. No authorities have been presented which make any distinction on principle between the use of one's full name and the use of only a part of his name.

"In this case the Court finds no fraud deceit or artifice on the part of defendant in the use he has made or is making of his own name in his business."

From a judgment denying the application for the injunction, plaintiffs appeal, contending that under the facts their property rights have been unlawfully invaded by defendant, and that defendant has been guilty of unfair competition.

There are many cases in the books discussing the problems involved when two persons or corporations do business under identical or similar names, and one seeks to enjoin the other. There are really two basic problems involved. One is whether the first in the field has established an exclusive property interest in the name as a trademark that warrants an injunction, and the other is whether the second in the field has been guilty of unfair competition so as to warrant an injunction. The two problems frequently overlap, and the cases do not always recognize the distinctions between them. Some of the cases, however, have recognized the distinction. (See *Dunston* v. *Los Angeles Van etc. Co.,* 165 Cal. 89, 94 [131 P. 115] ; *Yellow Cab Co. of San Diego* v. *Sachs,* 191 Cal. 238, 242 [216 P. 33, 28 A.L.R. 105] ; *Dodge Stationery Co.* v. *Dodge,* 145 Cal. 380, 387 [78 P. 879] ; *Tomsky* v. *Clark,* 73 Cal.App. 412, 417 [238 P. 950] ; see also Bus. & Prof. Code, § 14400, as compared with Civ Code, § 3369.)

In the instant case it is quite clear that, as against defendant, plaintiffs do not possess a property right in the use of the name "Mel's" that is entitled to the protection of an injunction. ■ Plaintiffs assert such a right under the provisions of section 14400 of the Business and Professions Code.

That section provides that "Any person who has first adopted and used a trade name, whether within or beyond the limits of this State, is its original owner." In spite of the broad language of this statute it is well settled that it is merely an affirmation of the common law rule and subject to common law limitations. (*Weatherford* v. *Eytchison,* 90 Cal.App.2d 379, 382 [202 P.2d 1040].) ▮ It certainly is the law that ordinarily personal names may not generally become trademarks for the simple reason that, in the absence of fraud or unfair practices every person has the legal right to use his or her name even though it is the same as that of another. Section 14242 of the Business and Professions Code recognizes this by providing that a trademark cannot consist of "Merely the name of a person not written, printed, . . . in some particular or distinctive manner . . ." (See *Dunston* v. *Los Angeles Van etc. Co.,* 165 Cal. 89 [131 P. 115]; *Italian Swiss Colony* v. *Italian Vineyard Co.,* 158 Cal. 252 [110 P. 913, 32 L.R.A.N.S. 439].)

The general rule was stated as follows in *Ida May Co., Inc.* v. *Ensign,* 20 Cal.App.2d 339, 343 [66 P.2d 727]:

"It is well settled that while a person may confer rights by consent upon another to use his personal name as a trademark, ordinarily personal names may not become trademarks because, as between persons of the same or similar names, each has an equal right to use his own name in his own business."

The court applied this rule to a situation where the plaintiff Ida May Company, Inc., had registered that name and then attempted to enjoin Ida May Ensign from the use of the names of Ida May in a competing business. The trial court found no fraud or unfair practices by defendant. The court denied the injunction, and, in doing so, quoted with approval the rules set forth in *Tomsky* v. *Clark,* 73 Cal.App. 412 [238 P. 950]. In that case, at page 418, the court stated:

". . . The right to do business under one's own name is one of the sacred rights known to the law; and a family name is incapable of exclusive appropriation and cannot be thus monopolized. (Nims on Unfair Competition and Trade Marks, 2d ed., § 67.)

"Every man has the absolute right to use his own name in his own business even though he may interfere with and injure the business of another bearing the same name; provided he does not resort to any artifice or do any act calculated to mislead the public as to the identity of the establishments or to

produce injury to the other beyond that which results from the similarity of names. [Citing many cases.] As just stated, equity will not allow a person to resort to artifice or contrivance in the use of his name as a result of which the public is deceived as to his business or products. But in such case it is not the use of a man's own name that is condemned, it is the dishonesty practiced in the use of it. [Citations.] Where it appears, however, as it does here, that the party sought to be enjoined has a right to use his own name and he does so reasonably and honestly, he is not obliged to abandon the use thereof or to unreasonably restrict it, whether used in a firm or corporation, merely because some confusion may have arisen from similarity of names.''

Similar statements appear in many cases. In *Dodge Stationery Co.* v. *Dodge,* 145 Cal. 380 [78 P. 879], after stating the general rule the court drew a well recognized distinction between a defendant using his own name that is similar to another's and the use by a corporation of a name already used by another. In this connection the court stated (p. 388): ''. . . a person comes naturally by his name from his parents, and it is a thing personal to himself, which in truth and in justice he has the right to use . . . while the name given to a corporation is an artificial and impersonal thing, selected arbitrarily by the corporators themselves, and which can be selected from an entire vocabulary of names.'' (See also *American Distilling Co.* v. *Bellows & Co.,* 102 Cal.App.2d 8 [226 P.2d 751], for an excellent summary of many of the cases on this subject.)

Plaintiffs do not seriously challenge this rule, but they contend that ''Mel'' is not defendant's name. His name, it is urged, is Melburn or Mel Graham. They contend that the rule has no application to the given name of an individual, and certainly not to an abbreviation of a given name. While most of the cases involve the family name of an individual rather than his given name (see annotation and collection of cases 47 A.L.R. 1189, 1190), there are cases holding that given names are within the protection of the rule. The Ida May case referred to, *supra* (20 Cal.App.2d 339), involved the protection of the first and second names of Ida May Ensign. In *Elize Costume Co.* v. *Mme. Elize, Inc.,* 206 App.Div. 503 [201 N.Y.S. 545], the New York Supreme Court permitted a woman whose first name was ''Elize'' to leave appellant's shop and open her own shop under the name of ''Mme. Elize.'' We have found no case holding that the rule under

discussion is limited to family names, and no logical reason for so limiting it has occurred to us or been suggested by plaintiffs. Nor is there any logical reason why the general rule should not apply to generally used ''nicknames'' or abbreviations of given names. It is the right to use the names by which one is generally known that is entitled to protection. Certainly, most persons with names susceptible to abbreviation—Ray for Raymond, Ed for Edward, Al for Albert, etc., and Mel for Melburn—are more usually known by the abbreviation than by the full given name, and the testimony shows that this was true in the instant case.

■ It cannot be successfully contended that plaintiffs have used the name ''Mel's'' so widely that, in the mind of the public, it has come to have a secondary meaning. The trial court found ''That it is not true that the trade name 'Mel's Drive-In' and 'Mel's Drive-In Restaurant' and 'Mel's' has become and are associated in the public mind with each and all of the restaurants organized, incorporated, conducted and operated by Harold S. Dobbs and David Melvin Weiss.

''That 'Mel's' has not become and is not synonymous in the public mind with the trade names 'Mel's Drive-In' and 'Mel's Drive-In Restaurant.' ''

These findings are amply supported by substantial evidence, and by reasonable inferences from that evidence.

This brings us to the second phase of the problem—unfair competition. ■ Although one may legally use his own name, he must do so honestly and not as a means of pirating the good will and reputation of a business rival. If the use of one's own name is calculated to cause confusion or to deceive the public such use constitutes unfair competition, and may be enjoined. (*MacSweeney Enterprises, Inc.* v. *Tarantino,* 106 Cal.App.2d 504 [235 P.2d 266] ; *Hoyt Heater Co.* v. *Hoyt,* 68 Cal.App.2d 523 [157 P.2d 657] ; *Jackman* v. *Mau,* 78 Cal.App.2d 234 [177 P.2d 599].)

■ Under section 3369 of the Civil Code as it now reads, injunctive relief against an act of unfair competition in the use of a trademark will be granted if the defendant is guilty of unfair or fraudulent business practices, or if the natural consequences of defendant's conduct are such as to cause deception. (*Schwartz* v. *Slenderella Systems of Calif., Inc.,* 43 Cal.2d 107 [271 P.2d 857] ; *Wood* v. *Peffer,* 55 Cal.App.2d 116 [130 P.2d 220].) ■ However, in the cases involving the use of one's own name injunctions have been usually granted only where there was a showing of actual fraud, that is, the

defendant resorting to artifice in the use of his name with actual intent to deceive. (*Winfield* v. *Charles*, 77 Cal.App.2d 64 [175 P.2d 69]; *Benioff* v. *Benioff*, 64 Cal.App. 745 [222 P. 835]; *Hoyt Heater Co.* v. *Hoyt*, 68 Cal.App.2d 523 [157 P.2d 657]; *Morton* v. *Morton*, 148 Cal. 142 [82 P. 664, 1 L.R.A.N.S. 660]; *Dodge Stationery Co.* v. *Dodge*, 145 Cal. 380 [78 P. 879]; *Jackman* v. *Mau*, 78 Cal.App.2d 234 [177 P.2d 599]; *Nolan Bros. Shoe Co.* v. *Nolan*, 131 Cal. 271 [63 P. 480, 82 Am.St.Rep. 346, 53 L.R.A. 384]; *MacSweeney Enterprises, Inc.* v. *Tarantino*, 106 Cal.App.2d 504 [235 P.2d 266].)

█ But in other than the personal name situation the defendant may be enjoined even in the absence of actual fraud if the natural consequence of his conduct is to cause deception. (*Wood* v. *Peffer*, 55 Cal.App.2d 116 [130 P.2d 220]; *Karsh* v. *Haiden*, 120 Cal.App.2d 75 [260 P.2d 633].) In *Hoover Co.* v. *Groger*, 12 Cal.App.2d 417 [55 P.2d 529] (not involving a name situation), the court stated the rule as follows (p. 419): "It is the policy of the law to protect the business of the first person to enter the field doing business under a given name to the extent necessary to prevent fraud upon his business and upon the public. [Citations.] A second to enter the field may be enjoined from the improper use of the name established by the first to enter the field. [Citation.] It is not necessary for the plaintiff to prove fraudulent intent. The defendants may be enjoined if the natural consequence of their conduct is such as to cause deception."

In all the personal name cases we have found where injunctions were granted there was some artifice used with the intent to deceive the public. In the instant case no such acts were committed by the defendant. The trial court first found "That defendant . . . does not pretend or represent to be connected or associated in, or affiliated with, or a branch or any part of any other 'Drive-In' or 'Drive-In Restaurant' "; and then found that "Defendant has committed no fraud, deceit or used any artifice in the use he has made or is making of his own name, 'Mel' in his own business, and has committed no injury or damage to plaintiffs because of using his own name." These findings are amply supported by the evidence.

But even if the broader rule were applicable to name cases, so that innocent deception of the public alone would be sufficient to warrant an injunction, such innocent deception does not here appear, certainly not as a matter of law. When defendant opened his establishment in Morgan Hill the only

other drive-ins then using the name of "Mel's" were two in San Francisco, 70 miles away, and one under construction in Salinas, 36 miles away. While the fact that plaintiffs and defendant are not in the same geographic area may not be conclusive (*Academy of Motion Picture Arts & Sciences* v. *Benson*, 15 Cal.2d 685 [104 P.2d 650] ; *Schwartz* v. *Slenderella Systems of Calif., Inc.*, 43 Cal.2d 107 [271 P.2d 857] ; *Benioff* v. *Benioff*, 64 Cal.App. 745 [222 P. 835]), since the customers of both parties are ambulatory, the wide separation of the competing establishments was a factor that the trial court could properly consider in determining whether the public was deceived or was likely to be deceived by the similarity of names. The problem is a factual one, and the trial court has decided it adversely to the plaintiffs. We cannot interfere.

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied August 31, 1955, and appellants' petition for a hearing by the Supreme Court was denied September 21, 1955.