[S. F. No. 6933.   Department One.—February 21, 1917.]

## FRESNO CANAL AND IRRIGATION COMPANY (a Corporation), et al., Respondents, v. PEOPLE'S DITCH COMPANY (a Corporation), et al., Appellants.

WATER RIGHTS—RIPARIAN PROPRIETOR—APPROPRIATION FOR USE ON NONRIPARIAN LAND—INJUNCTION.—A riparian proprietor is entitled, as against a mere appropriator for use on nonriparian lands, to the natural and usual flow of all the waters in the stream, except as such right has been limited or divested by agreement, or by prescription, and may restrain the appropriator's taking, without showing damage, upon the theory that the taking is an interference with his freehold, which he is entitled to restrain unless it ripen into a prescriptive right.

ID.—INJUNCTION PENDENTE LITE—REVIEW ON APPEAL—DISCRETION.— On an appeal from an order granting an injunction *pendente lite*, restraining the appropriation of the waters of a natural stream by the defendant for use on nonriparian land, it is only necessary that the court, to sustain the order, should find in the evidence sufficient basis to support the discretion which the trial court exercised.

ID.—MERITS NOT DETERMINED ON APPLICATION FOR PRELIMINARY INJUNCTION.—The granting or denial of a preliminary injunction does not amount to an adjudication of the ultimate rights in controversy. It merely determines that the court, balancing the respective equities of the parties, concludes that, pending a trial on the merits, the defendant should or that he should not be restrained from exercising the rights claimed by him. If it is reasonable to assume from the record on appeal that the trial court made its order upon this basis, the appellate court cannot say that it abused its discretion.

ID.—ABUSE OF DISCRETION NOT SHOWN.—In this action by a plaintiff claiming title to the waters of a natural stream both by prescription and as a riparian owner, to restrain the defendants from appro-

priating such waters in excess of a specified amount for use on nonriparian land, it is held that the granting of an injunction *pendente lite* was not an abuse of discretion.

Id.—Appropriated Water When Reduced to Possession.—Conceding that the right of an appropriator to have water flow from a river into a ditch, and the water flowing therein, is real property, such water is not reduced to possession until actually taken into the ditch by the appropriator.

Id.—Discretion of Trial Court in Granting Preliminary Injunction. The matter of granting a preliminary injunction is addressed to the sound discretion of the court, which is to be exercised according to the circumstances of the particular case; and its action will not be disturbed on appeal unless it shall clearly appear that there was an abuse of its discretion.

APPEAL from an order of the Superior Court of Fresno County granting an injunction *pendente lite*. George E. Church, Judge.

The facts are stated in the opinion of the court.

E. C. Farnsworth, L. L. Cory, and H. Scott Jacobs, for Appellants.

Short & Sutherland, and M. K. Harris, for Respondents.

LAWLOR, J.—Appeal from an order granting a temporary injunction *pendente lite* in an action begun in Fresno County, enjoining defendants from appropriating from Kings River at any time water in the aggregate in excess of nine hundred cubic feet flowing per second. The order was made on notice to show cause and after argument. It was based upon a verified complaint in an action to quiet plaintiff's title to the said waters, supported by affidavit. Certain counter-affidavits were offered by the defendants in opposition to the relief sought.

The complaint sets out the following facts: In the year 1897 the Fresno Canal and Irrigation Company, one of the plaintiffs, was the owner of a large tract or grant of land commonly known as the Laguna de Tache Rancho, containing about sixty-eight thousand acres, which extended along the northern borders of the Kings River for a distance of about twenty-five miles. The rancho is practically all located in Fresno County, and is wholly riparian to the river, which is

a natural stream.  During 1897, and prior thereto, the Fresno Canal and Irrigation Company had also been engaged in the business of appropriating and diverting waters from the Kings River for the purpose of irrigating portions of Fresno County.  Its canals connected with the river at a point where it leaves the foothills of the Sierra Nevada Mountains about thirty miles above the eastern and nearest line of the rancho. None of the waters diverted at this point, however, was supplied to the rancho.  At the same time, the People's Ditch Company, the Last Chance Water Ditch Company, and the Lower Kings River Water Ditch Company, defendants herein, were diverting water through certain other canals owned by themselves from points on the river in Fresno County and, for the most part, opposite the upper portion of the rancho. The water thus diverted was distributed by the defendants in Kings County for domestic, irrigation, and other purposes. Litigation having arisen between the parties mentioned, on October 4, 1897, they entered into an agreement to compromise their differences, by which it was agreed, in part, to divide the waters of the river among themselves in accordance with a certain scheme set forth therein, and that also "a judgment shall be obtained and entered in the superior court of the state of California, in and for the county of Tulare, fixing and determining the rights of the parties to this agreement as to their rights hereunder in reference to the right to the flow, use, and diversion of the waters of said Kings River."  The decree of the Tulare court was not entered until October 18, 1905.  Its provisions are substantially identical with those of the agreement.  The Lemoore Canal and Irrigation Company is the successor in interest to the Lower Kings River Water Ditch Company.  This action is commenced by plaintiffs as owners of the rancho to which riparian rights attach, and also as owners by prescription of a water right for public use, to quiet plaintiffs' title to the waters flowing in the river, the contention being made that the defendants are diverting and appropriating waters greatly in excess of the quantity to which they are entitled.

According to the terms of the agreement, a gauge for the measurement of all waters diverted from the river by the Fresno Canal and Irrigation Company · was established at a point near the intake of its canals, about thirty miles above the rancho.  It is provided that when there is one hundred cubic

feet or less of water per second flowing in the river, the said company "shall be entitled to divert all thereof." When there is over one hundred cubic feet and not exceeding 449 cubic feet flowing per second, the company "shall be entitled to divert" the first one hundred cubic feet, "and there shall be allowed to flow down said river for said Lower Ditch Companies" 349 cubic feet per second, or such portion thereof as is then flowing in the river. Other provisions, in like manner, provide for the division of the waters at higher stages of the river, until one thousand nine hundred cubic feet of water per second should be flowing therein. The provision which follows reads: "When there is flowing in said river nineteen hundred cubic feet of water per second at the aforesaid point of measurement, five hundred and ninety-nine cubic feet of water per second, and no more, shall be allowed to flow down said river for said Lower Ditch Companies." The next paragraph provides that the Fresno Canal and Irrigation Company may take a certain larger proportion of the waters in the river during the dry months of August and September of each year. Then follows the provision principally pertinent to the present controversy: "Provided, also, that when said Kings River shall be carrying, or there shall be flowing therein, over nineteen hundred cubic feet of water per second, as indicated and ascertained at said point of measurement, . . . of the additional quantity of water in said river, there shall be allowed to flow down for said Lower Ditch Companies to the extent of the next three hundred additional cubic feet of water per second flowing in said river, and no more." One other provision should be mentioned, wherein it is set forth that "nothing in this agreement shall be taken to waive the right of the Laguna de Tache Rancho to the first thirty cubic feet of water flowing per second in said river for use upon said grant."

The plaintiffs allege that for more than twenty years last past the Fresno Canal and Irrigation Company, on behalf of itself, the Laguna Lands Limited, and the other owners of the rancho, had appropriated 450 cubic feet of the waters of the river flowing per second for irrigation and beneficial uses upon the rancho, and that said appropriation was made under claim of right, openly, notoriously, continuously, and uninterruptedly. In connection with the allegations setting forth the riparian character of the rancho, it is alleged that

there are now growing upon it "many thousands of acres of trees, vines, alfalfa, grain, vegetables, and other growing crops needing and requiring the waters of Kings River aforesaid for the irrigation thereof, and unless so irrigated, all of said crops, trees, vines, and alfalfa, and other crops would be wholly lost, wither, and die, and become valueless." Referring to the terms of the agreement made in 1897 and the decree of the superior court of Tulare County, it is alleged that the defendants have never diverted through their respective canals for irrigational or other beneficial uses an aggregate quantity of water in excess of 636½ cubic feet of water flowing per second, and that this quantity of water is ample and sufficient for all the necessary irrigational and other beneficial uses of the lands supplied by their canals, but that, notwithstanding these facts, the defendants have, within three weeks prior to the filing of the complaint, commenced to divert waters not only in excess thereof, but in excess of nine hundred cubic feet flowing per second, "to wit, aggregating one thousand one hundred cubic feet flowing per second, or upward." It is also stated that the defendants assert the right and intention of diverting, consuming, and wasting the waters to the full extent of the capacity of their respective canals, which, it is alleged, they claim aggregate one thousand three hundred cubic feet flowing per second. The complaint also sets out the alleged dryness of the season, the inadequacy of the waters in the river to supply defendants' excessive demands without wholly depriving plaintiffs of water which is needed to irrigate the rancho, and contains other allegations common to such form of complaint which need not be particularly mentioned. The agreement itself appears in the affidavit filed by the plaintiffs, while the decree of the Tulare court is given in full in one of the defendants' affidavits.

Assuming that the facts alleged are true, as riparian proprietors, the plaintiffs would be entitled, as against the defendants, to the natural and usual flow of all the waters in the river, except as such right had been limited or divested by the agreement referred to, or by prescription. The defendants, it is to be noted, are not claiming any riparian rights. It has been said that riparian proprietors "may restrain such a taking [referring to a taking of waters from a natural stream by nonriparian proprietors] without show-

ing damage, upon the broad doctrine of riparian rights, that the taking itself is an interference with his freehold which he is entitled to restrain lest it ripen into a prescriptive right." (*Miller & Lux* v. *Enterprise Canal etc. Co.*, 169 Cal. 415, 443, [147 Pac. 567, 578].) The defendants say: "All the counter-affidavits filed on behalf of the defendants show that it was the understanding of the parties to the agreement that the defendants (the Lower Ditch Companies mentioned in the agreement) have the right to use all of the waters of Kings River in excess of two thousand two hundred cubic feet of water flowing per second at the point of measurement. . . . That was the practical construction placed upon the contract by the parties to it, . . . " The terms of the agreement, however, are not equivocal as the defendants suggest. When there is flowing more than one thousand nine hundred cubic feet of water per second, it is definitely provided that in addition to the quantity of water which "shall be allowed to flow down" at the one thousand nine hundred feet stage, namely, 599 cubic feet "and no more," an additional quantity to the extent of the next three hundred cubic feet flowing per second shall be allowed to flow down, "and no more." Under such conditions there would flow down 899 cubic feet per second. It would be difficult to express in clearer terms the obvious intention of the parties—the Fresno Canal and Irrigation Company, so far as the parties to the agreement were concerned, "shall be entitled to divert" through their canals at the point of measurement, thirty miles up the river, the remaining waters. Indeed, by a further provision the defendants expressly agreed that they "shall not . . . claim or demand any greater quantity of water than is herein provided for, to be allowed to flow to them." The defendants claim: "There is nothing anywhere in the language of said agreement which would deprive defendants of the right to divert any additional quantity of water from said Kings River, over and above the two thousand two hundred foot stage." But the practical difficulty here is that the Fresno Canal and Irrigation Company has first the right of not permitting such additional quantity to flow down to the said defendants. And, on the other hand, if it does allow the excess waters to flow down, it is also to be noted that the agreement con-

tains no word or clause which gives the defendants the right to appropriate them.

But it is insisted that inasmuch as the Fresno Canal and Irrigation Company did actually permit more than nine hundred cubic feet of water per second to flow past its own canals, such excess waters at least became again a part of the natural stream, and the company has no further control as to who should thereafter divert such waters. If it were important for us to determine this point, we would doubtless agree with the defendants, that regarding the Fresno Canal and Irrigation Company purely as a party to the agreement and owner of the upper canals, it would probably have no just cause of complaint on account of such lower diversion. But the company appears as owner of the rancho, riparian property, to which, according to the allegations of the complaint, it is supplying water for irrigational and other beneficial purposes. Such waters do become a part of the natural stream. Yet this point does not help the defendants, for while passing the rancho the waters, not included in the agreement as expressly belonging to the defendants, are subject to the riparian rights appurtenant thereto.

In matters of this kind it is merely necessary that the appellate court find in the evidence sufficient basis to support the discretion which the trial court exercised. "The granting or denial of a preliminary injunction does not amount to an adjudication of the ultimate rights in controversy. It merely determines that the court, balancing the respective equities of the parties, concludes that, pending a trial on the merits, the defendant should or that he should not be restrained from exercising the rights claimed by him." (*Miller & Lux* v. *Madera Canal etc. Co.*, 155 Cal. 59, [22 L. R. A. (N. S.) 391, 99 Pac. 502].) If it is reasonable to assume from the record here that the trial court made its order upon the basis suggested, this court cannot say that it abused its discretion. But that the court did so base its order cannot even be left to question. Its order was to restrain defendants "pending the trial of this action, and until the further order of this court, from appropriating, diverting, or taking from the said Kings River described in the complaint on file herein, at any time, water in the aggregate in excess of nine hundred cubic feet flowing per second; . . . " The defendants, apparently

overlooking the riparian rights appurtenant to the rancho, lay stress upon the fact that the plaintiffs set out prescriptive rights to only 450 cubic feet of water, and contend that the court's order should be reversed, for the reason that it did not at least allow the defendants to divert, in addition to the first nine hundred cubic feet of water, all the waters in excess of the next 450 cubic feet belonging to the rancho. The allegations touching the rights by prescription, however, were not essential to the action. It was proper to regard such allegations as only additional evidence of the equities entitling the plaintiffs to the injunctive relief sought.

The defendants also point out that the preliminary injunction "restrains these defendants at all times without reference to the stage of the river, and even at flood times when there may be thousands of cubic feet of water going to waste past their head gates, from diverting more than nine hundred cubic feet of water," and contends that an injunction of such a nature cannot issue. (Citing *Huffner* v. *Sawday*, 153 Cal. 86, [94 Pac. 424].) As the court's order is merely temporary, the point is not well taken. The complaint praying for the injunction was filed in May and the order issued the following December. It is altogether likely that the defendants had ample opportunity to bring the action to judgment before the spring floods referred to in their affidavits, or, in any event, when such floods were threatening, to apply to the court for a "further order." The court's order is directed wholly to the protection of the rights of the plaintiffs to the waters appurtenant to the rancho, except as the same were limited by the quantity of water which the defendants could take under the agreement, and is in no way concerned with or directed against the appropriation by the defendants of extraordinary flood and storm waters.

It is not necessary to refer to all the matters set up in the affidavits filed by the defendants. The affidavits are six in number, elaborate in detail, and substantially alike in form. What has already been said disposes of most of the averments. The affiants vigorously deny various equities set up in the complaint. But "clearly, the affiant has no power to admit, deny, or allege any fact, and until an answer was filed, how could he know what defendant admitted, denied, or alleged?" (*Marks* v. *Weinstock, Lubin & Co.*, 121 Cal. 53, [53 Pac. 362].) There was no answer introduced at the hearing in

the instant case. It is important to note, however, that the defendants do not deny that the rancho is possessed of riparian rights, as alleged. Many averments refer to the alleged interpretation placed upon the agreement by the parties thereto. They are, in many respects, legal conclusions which are to be disregarded. (*Porters Bar Dredging Co.* v. *Beaudry,* 15 Cal. App. 751, [115 Pac. 951].) The most significant averments are those in which it appears that from ten to practically forty years, varying as to the respective defendants, they have been diverting and using water from the Kings River peacefully, notoriously, and under a claim of right to the full capacity of their ditches, aggregating one thousand eight hundred cubic feet of water flowing per second, whenever, during the usual irrigation seasons of each year, there was that quantity of water flowing in the river; that the district, supplied through their respective irrigation systems, consists in the aggregate of about one hundred and thirty-five thousand acres of improved land devoted to valuable horticultural, agricultural, and viticultural products; that this district supports a "large and prosperous community," embracing Hanford, Lemoore, Armona, and other towns; "that the inhabitants of Kings County are absolutely and entirely dependent upon this source of supply for their water for irrigation, domestic, and other purposes"; and that nine hundred cubic feet flowing per second "is not sufficient under any circumstances" to properly supply and irrigate such lands. The court, having regard to the allegations of the complaint, may not have believed the truth of the averments upon which it is sought to establish such prescriptive rights. Under the circumstances giving rise to the agreement and the other facts alleged in the complaint, which the court may well have believed, it is difficult to conceive how it could have reached any other conclusion. Yet it is more reasonable to assume that, in its opinion, the defendants made their claims to one thousand eight hundred cubic feet of water per second under a misunderstanding as to the terms of the agreement, and without any intention on their part of asserting and establishing prescriptive rights therein as against the riparian or other rights appurtenant to the rancho. Without passing upon the merits, it is sufficient to say, under the showing made, it was within the discretion of the court to conclude that no prescriptive rights were gained. Even

if it be assumed, as averred, that the plaintiffs, with full knowledge that the defendants were appropriating more than nine hundred cubic feet of water per second, did acquiesce therein, it does not follow that the plaintiffs have no right to injunctive relief. Riparian rights are not lost by disuse, provided, of course, no adverse prescriptive rights are acquired. (*Anaheim Union Water Co.* v. *Fuller*, 150 Cal. 327, 335, [11 L. R. A. (N. S.) 1062, 88 Pac. 978].)

The point is raised that the sole object and effect of this action is to enforce in Fresno County a decree of the superior court of Tulare County, a proceeding which the defendants characterize as "*sui generis* and unique." This claim is obviously without merit. (*Rowe* v. *Blake*, 99 Cal. 167, [37 Am. St. Rep. 45, 33 Pac. 864].) As regards the further contention that the plaintiffs should have submitted the controversy to arbitration in accordance with the procedure prescribed by the agreement, it is sufficient to note that, irrespective of section 3390 of the Civil Code, the agreement fails to provide that the parties, if they so desire, may not commence an action in the courts without resorting to arbitration. (5 C. J., p. 42.)

It is further urged that the court had no authority to dispossess the defendants of water, the title to which was in dispute, where the pleadings show that it was in their possession. (Citing, *inter alia, San Antonio W. Co.* v. *Bodenhamer*, 133 Cal. 248, 251, [65 Pac. 471].) Although it may be conceded that the right to have water flow from a river into a ditch, and the water flowing therein, constitute real property (*Stanislaus W. Co.* v. *Bachman*, 152 Cal. 716, 725, [15 L. R. A. (N. S.) 359, 93 Pac. 858]), such water is not reduced to possession until actually taken into the ditches by the appropriator. The wrongful diversion of the waters was a continuous act, and the court had authority to restrain a repetition or continuation of the injury being done to the plaintiffs.

The defendants claim throughout that "the court should not have granted the temporary injunction as plaintiffs were not the parties most likely to be injured by the granting or denial thereof." The answer to this, as well as to many other similar points insisted upon by the defendants, is contained in the well-settled rule that the matter of granting a preliminary injunction is addressed to the sound discretion of the

court, which is to be exercised according to the circumstances of the particular case; and its action upon such application will not be disturbed on appeal unless it shall clearly appear that there was an abuse of discretion. (*Lagunitas W. Co.* v. *Marin C. W. Co.*, 163 Cal. 332, [125 Pac. 351]; *Marks* v. *Weinstock, Lubin & Co.*, 121 Cal. 53, [53 Pac. 362]; *Porters Bar Dredging Co.* v. *Beaudry*, 15 Cal. App. 751, [115 Pac. 951].) This disposes of all the material points, and it is our opinion that the defendants have failed to show, in any particular, that the court abused its discretion in issuing the temporary injunction.

The order is affirmed.

Shaw, J., and Sloss, J., concurred.