[Civ. No. 15919. First Dist., Div. One. May 19, 1954.]

JOHNNIE DANIELS et al., Respondents, v. JAMES A. WILLIAMS et al., Defendants; WALTER E. Mc-MANNIS, Appellant.

Thiel, Sassone & Howard for Appellant.

John A. Grennan and Burt S. Hofmann for Respondents.

WOOD (Fred B.), J.—Plaintiffs brought this action to annul a promissory note and deed of trust which they had executed, claiming fraud in the procurement thereof.

As defendants, they joined Ben Melmet, the payee of the note, James A. Williams, allegedly active in procuring the note, Milton N. Owens, allegedly engaged by Melmet to sell the note, and Walter E. McMannis, the present holder of the note.

Upon application of the plaintiffs, a preliminary injunction was issued restraining McMannis, during the pendency of the action, from disposing of the note or the deed of trust

or from causing the sale of the real property covered by the deed of trust, conditioned upon the filing of a $3,000 corporate surety bond by the plaintiffs.

McMannis has appealed from the order for this injunction. He contends it was an abuse of discretion, a reversible error, to make the order because, according to his view of the evidence and the law, (1) there was no evidence to support the order and (2) the order was based upon the mere allegations of the complaint which were fully and specifically controverted by verified answer and sworn testimony.

(1) *Our examination of the record convinces us that the evidence adequately supports the order.*

The evidence consists of the verified complaint and the testimony of McMannis and one Rudy Washburn. McMannis did not file an answer until after the injunction had been granted.

McMannis claims he is a holder in due course but has adduced no evidence tending to prove that any prior holder had a good title to the note. He testified that prior to purchasing the note he had no knowledge at all of any of the dealings between any of the other parties to the action in connection with this transaction.

Accordingly, the following facts stated in the complaint are uncontradicted: Plaintiffs own certain real property subject to a secured indebtedness of $4,187.15. Plaintiffs requested defendant Williams to procure a purchaser. He later informed them he had a purchaser but represented that, to consummate the sale, it would be necessary to extinguish the existing loan and for that purpose execute and sell a new note and deed of trust for $4,000. Relying upon his representations, they executed the note and deed of trust in suit, which Williams without plaintiffs' knowledge or consent sold to Melmet, taking the proceeds for his own use and not extinguishing the original indebtedness of $4,187.15. Melmet was at all times aware of Williams' plan to defraud plaintiffs and convert the proceeds to his own use, and purchased the note with knowledge of Williams' defective title. Melmet employed Owens to sell the note and Owens knew or had sufficient cause for knowing that Melmet's title was defective.

The verified complaint further states that McMannis knew or had good cause for knowing that Melmet's title was defective, and, upon information and belief, that McMannis paid $2,500 for the note.

McMannis testified that he first learned of this note and

deed of trust from a newspaper advertisement which stated: "Second trust deed $4,000.00, payable $40. a month, 7 percent interest, sell for $2800. Templebar 6-1110." He called the phone number and talked to one Dancy, an employee of defendant Owens, and was given the street address of the property. He inspected the property; phoned Dancy that $2,800 was too high; they agreed on $2,500. He deposited the money in escrow, his instructions being that upon Melmet's endorsing the note the sale would be complete. The transaction was completed and he received the note and deed of trust. He did not know the plaintiffs when he bought the note, nor did he know the payee, nor had he any prior dealings with Owens or Dancy. He did not know and did not inquire who was the maker of the note which supposedly was secured by the first deed of trust. He is a real estate broker and has purchased a number of second deeds of trust while in the real estate business.

Rudy Washburn testified on behalf of McMannis that in his opinion the second deed of trust when McMannis bought it was worth about $2,400 and that the property is worth between $9,500 and $10,500. When valuing the deed of trust in suit, Washburn viewed the premises but did not inquire as to the amount of rent being paid and did not know the amount of the first deed of trust. He admitted that the amount of the first would make a difference in his evaluation of the second if the first were real small.

Asked if it is his intention to go ahead and foreclose, McMannis said "Well, I think I'm entitled to my payments, my monthly payments. I purchased that. I paid my money out for it. I think I am entitled to it."

. It is clear that it appeared to the trial judge that foreclosure of the deed of trust or sale of the note "during the litigation would produce . . . great or irreparable injury, to a party to the action" (Code Civ. Proc., § 526). The evidence amply supports his implied finding to that effect. Accordingly, it was no abuse of discretion for him to grant the injunction, especially in view of the $3,000 bond which it would appear is well calculated to cover any and all losses McMannis conceivably may sustain.

In such a case as this the following statement seems particularly apt: "It is a rule, universally followed and often stated, that the granting, denying, dissolving or refusing to dissolve a preliminary or temporary injunction is not a matter of right but rests in the sound discretion of the trial court,

upon a consideration of all the circumstances of each case, and that such discretion will not be reviewed on appeal in the absence of a showing of abuse. It is only necessary in the review of the action of the court in granting or denying a preliminary injunction that the appellate court shall find in the evidence sufficient basis to support the discretion which the trial court exercised. Even where there is a substantial conflict in the evidence the order will not be overthrown merely because there may be considerable or even preponderating evidence which, if believed, would have led to a contrary conclusion. The discretion, however, should be exercised in favor of the party most likely to be injured." (14 Cal.Jur. 180-183, Injunction, § 7.)

In this case there is no conflict in the evidence that the note was obtained by fraud, a fraud which infected the title of the payee, McMannis' immediate predecessor. McMannis, therefore, has the burden of showing that he acquired the note under circumstances which made him a holder in due course: "Every holder [of a negotiable instrument] is deemed prima facie to be a holder in due course; *but when* it is shown that *the title of any person who has negotiated the instrument was defective,* the *burden is on the holder to prove that he* or some person under whom he claims *acquired the title as holder in due course.*" (Civ. Code, § 3140; emphasis added.) The nature and extent of McMannis' inquiries prior to purchase and the considerable discount at which he purchased, lend emphasis to the view that equity should maintain the status quo until, at the trial on the merits, McMannis meets and carries or fails to carry that burden.

■ (2) *The allegations of the complaint were not "fully and specifically controverted by verified Answer and Sworn Testimony" as asserted by McMannis in his opening brief.*

The record upon this appeal contains no answer. It is totally silent on the question whether an answer was presented or filed. Plaintiffs in their brief state that McMannis "did not file an answer to respondents' complaint until after the preliminary injunction had been granted. Therefore, the answer was not before the [trial] Court when it rendered its decision. . . ." McMannis has not denied this statement.*

The testimony, as we have seen, controverted but a few of the allegations of the verified complaint: only those which

---

*He filed no reply brief and, pursuant to stipulation and request of the parties, the case was submitted upon the briefs on file, without oral argument.

pertained to McMannis' acquisition of the note, none of those which tended to prove fraud in the making of the note and defective title while in the hands of his predecessor.

Accordingly, this is not a case in which the principle enunciated in *Gagliardo* v. *Crippen*, 22 Cal. 362, applies. In that case the allegations of the complaint were "fully and specifically controverted by the affidavit." Therefore, said the court, "as the equities, whatever they may be, are denied, it is unnecessary to pass upon the objections to the complaint." (P. 362.) In our case, as we have seen, the defendant's oral testimony (equally effective, of course, as an affidavit would be) controverted but a few of the allegations of the complaint, manifestly a different type of case from the Gagliardo case.

The order appealed from is affirmed.

Peters, P. J., and Bray, J., concurred.