[Civ. No. 23650. Second Dist., Div. One. July 22, 1959.]

FAMILY RECORD PLAN, INC. (a Corporation), Respondent, v. RAY M. MITCHELL et al., Appellants.

238

Alvin H. Weissman and Richard R. Hoegh for Appellants.

Harold Easton, John P. McGinley, Loeb & Loeb and Herman F. Selvin for Respondent.

LILLIE, J.—The lower court granted to plaintiff a preliminary injunction prohibiting defendants from the continuance of certain acts claimed to constitute the infringement of a trade name (Bus. & Prof. Code, § 14400) and unfair competition (Civ. Code, § 3369). The parties are each engaged in the same business in this state and in the same

general areas elsewhere, namely, selling photograph albums along with photograph certificates which, as part of a package deal, entitle the purchaser periodically to a specified number of photographs, usually of the purchaser's children, taken at studios under contract with the parties. The matter was submitted upon the amended complaint and verified answer (which likewise seeks injunctive relief), various affidavits and counteraffidavits, excerpts from depositions and numerous exhibits. Following the submission, the trial court enjoined defendants from using the name "Family Album Plan or any name confusingly or substantially similar to the name Family Record Plan," copying or imitating the advertising material used by plaintiff (particularly a certain advertising brochure described in the order), and representing to the public that defendant Mitchell was the founder and first president of plaintiff corporation.

Defendants have appealed from the order directing the issuance of the temporary injunction. They contend mainly that in advance of the trial on the merits, an insufficient showing was made to justify the implied factual determination and that the court, therefore, abused its discretion in granting the extensive relief prayed for by plaintiff. This court issued a writ of supersedeas as to certain of the foregoing prohibitions during the pendency of this appeal (January 28, 1959).

■ ■ The factual summary which follows is necessarily governed by settled rules on appeal; thus, in ascertaining whether the facts warrant an order granting a preliminary injunction, it is incumbent upon this court to view such facts most favorably to the plaintiff (*Isthmian S.S. Co.* v. *National Marine etc. Assn.*, 40 Cal.2d 433, 435 [254 P.2d 578]); and in considering an order involving the decision of a question of fact, made on affidavits, all conflicts must be resolved in favor of the prevailing party (*Voeltz* v. *Bakery etc. Union*, 40 Cal.2d 382, 386 [254 P.2d 553]), and all reasonable inferences which are to be drawn must be in support of the trial court's order (*Hale* v. *Bohannon*, 38 Cal.2d 458, 466 [241 P.2d 4]).

In the early part of 1946, plaintiff's predecessor, then known as Photographic Artists' Association, was organized as a partnership. Later that year it incorporated, defendant Mitchell becoming its president as well as a large stockholder, but the next year, in 1947, he severed all connections with the concern. In the early months of 1948, according to the affidavit of one Kirby, who was then one of its execu-

tives, plaintiff first commenced the practice of entitling its albums "Our Family." In 1952, the business was changed back to a partnership, and in December of 1953 the partners again formed a corporation bearing the present corporate name "Family Record Plan, Incorporated." Meantime, and almost immediately following his disassociation from plaintiff's predecessor, Mitchell started a similar business as a sole proprietorship under the firm name and style of International Association of Photographers. In connection therewith he claims to have used the phrase "Our Family" in 1948 although he later admitted its earliest use was more likely in November 1949; reference was also made by him to the business use of the same phrase in 1951, but the supporting affidavit indicates that it was merely the title of an office record of some sort, namely, "Verification of Family Album Account." That year, also, the sole proprietorship was transferred to a corporation of the same name. Early in 1952, as Mitchell avers, the corporation decided upon the name "Family Treasury Album Plan" to identify its goods and services; that same year dealers were furnished with an advertising folder or brochure (to which reference will later be made) inviting the public to communicate with "Family Treasure Album" at a designated postoffice box in Hollywood, California.

In or about April of 1954, due to the tendency of employees, dealers and the public to use the shorter title, the trade name "Family Album Plan" was adopted and has been used by defendants continuously ever since. This was done with knowledge that plaintiff, in 1953, had adopted and was using the name "Family Record Plan." The names, defendants admit in their answer, may be confusingly similar. At the hearing below, however, their counsel argued that his clients had previously appropriated the phrase's key word, to wit, "Family," asserting "This is the key word and that is what causes the confusion." Plaintiff, on the other hand, contended that it was first to use the key word; also, that its corporate name, unlike defendants', had as early as 1954 acquired a secondary meaning necessarily associating its products and services in the minds of a substantial segment of the public which, in turn, has been confused and misled as a result of defendants' activities. Instances of such confusion on the part of customers and prospective customers in nine different states, including California, were testified to by various affiants.

As to the claim of unfair competition (count two), there was documentary evidence of marked similarity between the parties' distinctive advertising material. Here again, defendants maintain that they were first in the field. As previously mentioned, in 1952 they brought out the asserted forerunner of the brochure which they are now enjoined from using; it shows a prominently placed picture of a photograph album with the words "Our Family" on the cover, pictures of growing children from infancy through early school years, a facsimile of a portrait certificate issued by the company, and other items not necessary to list. Mention is made by defendant of plaintiffs' 1954 brochure, said to have been received as an exhibit, which lacks the features found in defendants' 1952 publication. Be that as it may, in 1956 plaintiff commenced distribution of a new brochure which, although much larger in size, is similar in several respects to defendants' first brochure. Therein are likewise depicted a photograph album with the words "Our Family" (although in different script), a facsimile of a portrait certificate and pictures of growing children, and other items. Later in 1956, possibly by way of retaliation, defendants also brought out a new brochure. As a side-by-side comparison will show, it strikingly parallels plaintiff's brochure in design, format coloring and content. In fact, the baby picture prominently featured therein is an exact duplicate of that used by plaintiff and was secured from the same source; too, Mitchell admitted that this pamphlet was prepared after examination and discussion of plaintiff's publication with his own advertising agency. He now contends that the two brochures "taken as a whole" are not similar "though both have their origins in the early 1952 brochure."

As noted earlier, the chief attack upon the order appealed from is premised on the claim that the case is a close one on its facts and that the power to enjoin should not have been exercised under such circumstances. While there are certain subsidiary contentions, appellants argue that (1) their prior appropriation of "Family Album Plan" gave them an unqualified right to use that name; (2) respondent has not shown that its name had acquired a secondary meaning at the time appellants' name was adopted; (3) neither their name nor their advertising methods are confusingly similar with that of respondents'; and (4) comparative injuries and conveniences were not balanced and considered, it

being urged in that respect that respondent has engaged in unfair and monopolistic practices.

■■ It is, of course, true that injunction is an extraordinary power and should always be exercised with great caution (*Mallon* v. *City of Long Beach,* 164 Cal.App.2d 178, 190 [330 P.2d 423]); but it is likewise true that "(w)here there is a substantial conflict in the evidence regarding an issue which may affect the discretion of the court . . . the order made will not be overthrown merely because there may be considerable or even preponderating evidence which, if believed, would have led to a contrary conclusion" (*Miller & Lux* v. *Madera Canal etc. Co.,* 155 Cal. 59, 62-63 [99 P. 502, 22 L.R.A. N.S. 391]). To the same effect are *Daniels* v. *Williams,* 125 Cal.App.2d 310, 313 [270 P.2d 556], and *Watts* v. *Hollywood etc. Service, Inc.,* 81 Cal.App.2d 100 [183 P.2d 353]. ■ In the last analysis the trial court must determine which party is the more likely to be injured by the exercise of its discretion (*McCoy* v. *Matich,* 128 Cal.App.2d 50, 52 [274 P.2d 714]) and it must then be exercised in favor of that party (*McCoy* v. *Matich, supra.*)

Section 14400, Business and Professions Code, declares that "(a)ny person who has first adopted and used a trade name, whether within or without the limits of the State, is its original owner." Protective relief by way of injunction is made available to the owner upon proof of infringement (Bus. & Prof. Code, § 14402). Respondent submits that the parties' names represent a combination of ordinary generic words constituting a trade name, as distinguished from a technical trade mark, within the meaning of section 14400. Appellants contend, however, that each name or title is descriptive of the type of business in which the parties engaged, that their use of the identifying phrase antedated that of the respondent and furthermore, the words being merely descriptive are not subject to exclusive appropriation (*Applebaum* v. *Senior,* 154 Cal.App.2d 371 [316 P.2d 410]).

■ But, as the Applebaum decision points out, generic or descriptive words can acquire a secondary meaning, citing *Academy of Motion Picture Arts & Sciences* v. *Benson,* 15 Cal.2d 685, 688-690 [104 P.2d 650], and *H. Moffat Co.* v. *Koftinow,* 104 Cal.App.2d 560, 564, 565 [232 P.2d 15]. Strikingly similar is *Rosenthal* v. *Brasley-Krieger Shoe Co.,* 19 Cal.App.2d 257 [64 P.2d 1109], in which the court rejected the claim that the word "Family" was generic and therefore incapable of being appropriated for use in connection with

other words as a trade name. In the case at bar respondent maintained, and the court impliedly found, that a secondary meaning had attached to its name; accordingly, if there is substantial evidence to support that finding, appellants' contention must fail.

Apparently recognizing this, appellants next contend that there was a failure of proof by respondent that its name had acquired a secondary meaning. While section 14400, *supra*, provides that the acquisition of a trade name is dependent upon its first use, the courts generally apply the common law rule of secondary meaning to trade names not subject to technical appropriation, and priority of adoption (as in the case of trade marks) becomes less controlling (47 Cal.Jur.2d 723 "Trademarks"). The principle is well set forth in the Restatement, Torts, section 717(f): "A designation is a trade name only if . . . it has acquired a special significance as a name of the goods, services or business of one person. Until the designation has acquired this special significance, it is not protected as a trade name. Acquisition of this special significance, rather than priority of use, is, therefore, a necessary condition of protection . . ." Stated otherwise, "Anyone may use a title if there is no secondary significance." (*Curtis* v. *Twentieth Century-Fox Film Corp.*, 140 Cal.App.2d 461, 469 [295 P.2d 62].)

 It is now firmly established that the question whether a title has acquired a secondary meaning is one of fact in each case (*Jackson* v. *Universal International Pictures, Inc.*, 36 Cal.2d 116, 121 [222 P.2d 433]); likewise a factual question consists of the length of time within which such special significance can attach (*Jackson* v. *Universal International Pictures, Inc., supra*, 122-123; Rest., Torts, § 716(b)). In the light of the foregoing rules the basic problem appears to be a determination of which title or name, regardless of its adoption in point of time, first made a sufficient impact on a substantial segment of the purchasing public that there thus arose the required association betwen the title or name and its single source.

 Upon the record before us, we are unable to say that as a matter of law respondent did not fulfill its burden of establishing the "required association" in the public mind during the period in question. Thus, there was a showing by respondent that over 700,000 families had participated in its program. In 1954, a critical year because in May thereof

appellants formally adopted their present name, respondent averaged over 1,500 sales a week, it had 700 studios under contract and employed 300 salesmen in some 48 sales districts. By 1958 the volume of individual sales had increased to 2,300 per week; it now has 900 studios under contract and its sales force has grown to 457 persons. Annual sales now total $5,000,000. Additionally, and particularly germane to the issue at hand, is evidence establishing the expenditure of $369,000 in advertising and the distribution of 300,000 brochures. The foregoing utilization of all the accepted media of communication — sales, advertising and other forms of publicity—amply supported the conclusion that a sufficient impact had been made upon the public mind, and a secondary meaning thereby acquired. Too, contrary evidence by appellants fell short of the impressive showing by respondent, both as to the areas reached and the extent of sales, which factors are material in a determination of the problem (*North American Aircoach Systems, Inc.* v. *North American Aviation, Inc.* (9th Cir.), 231 F.2d 205.)

Also, there is the further element of the likelihood of public confusion to which secondary meaning is closely related. ''Whether it (secondary meaning) exists depends on whether the public is likely to be deceived'' (47 Cal.Jur.2d 746, ''Trademarks''). In the case at bar there was proof that actual confusion occurred among customers and prospective customers at various locations across the nation. Indeed, it was averred by an employee of a Better Business Bureau that she had mistakenly referred to respondent a complaint about the activities of appellants' company which required an adjustment. In this regard, and *a fortiori*, ''The law is not made for the protection of experts, but for the public—that vast multitude which includes the ignorant, the unthinking and the credulous who, in making purchases, do not stop to analyze but are governed by appearance and general impressions'' (*Stork Restaurant, Inc.* v. *Sahiti* (9th Cir.), 166 F.2d 348, 359.) Finally on this point, and as hereinbefore, appellants admit that the parties' names ''may'' be confusingly similar; this concession alone lends strong support to the finding now unsuccessfully challenged.

Appellants further argue, in opposition to the claim of unfair competition, that their advertising methods did not result in confusion. Section 3369 of the Civil Code in pertinent part provides that preventive relief can be granted in the case of unfair competition which ''shall mean and in-

clude unfair or fraudulent business practice and unfair, untrue or misleading advertising . . .'' ▮ In *Wood* v. *Peffer*, 55 Cal.App.2d 116, 123 [130 P.2d 220], (quoting from *Pohl* v. *Anderson*, 13 Cal.App.2d 241 [56 P.2d 992]), the court said: ''No inflexible rule can be laid down as to what conduct will constitute unfair competition. Each case is, in a measure, a law unto itself. Unfair competition is a question of fact . . . The universal test question is whether the public is likely to be deceived.'' (See also *Schwartz* v. *Slenderella Systems of Calif., Inc.*, 43 Cal.2d 107 [271 P.2d 857].)

Much of the evidence submitted to the trial court on the issue of trade name infringement, to which we have already referred, was also relevant to the question of unfair competition. As observed in *D & W Food Corp.* v. *Graham*, 134 Cal. App.2d 668, 672 [286 P.2d 77], the two problems frequently overlap, and this is particularly true in the case at bar. Applying the test stated in *Wood* v. *Peffer, supra,* 123, numerous instances of consumer confusion, or confusion of source, were set forth in affidavits received in support of the order sought. These affiants consisted of customers, possible customers and photograph dealers. According to their averments, they had observed many occasions in which people had purchased appellants' products and services under the belief that they were dealing with respondent. Several of the affiants themselves had been confused or misled. Reference has already been to the occurrence involving an employee of a Better Business Bureau. ▮ Further, absent any showing that appellant's trade name (as distinguished from that of respondent) had acquired a secondary meaning, no justification existed for the use of that name in their 1956 folder or brochure, even though there may have been some understandable chagrin on appellants' part that respondent had invited such retaliatory tactics by assertedly copying the general format of their 1952 brochure. Their motives may have been innocent, that is, free from fraud; but section 3369, *supra,* as it now reads, protects against unfair *or* fraudulent business practices, thus rendering inapplicable earlier cases relied on by appellants. ▮ It also follows that the trial court was warranted in concluding that the use of Mr. Mitchell's picture in this same 1956 brochure was enjoinable under all the circumstances, particularly as it identified him as the ''Founder and past president of the Photographic Artists Association later known as Family Record Plan,''

Appellants make little, if any defense, of this seeming violation of ordinary business ethics; they simply state that it was "natural" for him, in view of respondent's alleged false advertising, to include the "true" statement of his past connection with his chief competitor. However, having sold his stock in respondent's predecessor company, he was at the very least bound by the implied covenant "of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." (*Brown* v. *Superior Court*, 34 Cal.2d 559, 564 [212 P.2d 878].) See also *Karsh* v. *Haiden*, 120 Cal.App.2d 75, 82-83 [260 P.2d 633].

At this juncture we dispose of the somewhat subsidiary claim by appellants that respondent should be denied extensive, or any, relief in view of its asserted acquiescence in the use of the name Family Album Plan for a period of some four years following its first adoption. ■ But acquiescence, or laches, must be accompanied by circumstances amounting to an abandonment of rights in a trade name (87 C.J.S. "Trademarks" p. 524, § 183B), and we have already made mention of the increase in respondent's sales, its continued commercialization of its name, and other activities which serve to indicate that no abandonment occurred. ■ Also, although the fact of laches or delay will constitute a defense, upon proper proof, of respondent's claims for an accounting and damages, mere delay and silence do not amount to consent and are no bar to injunctive relief against a continuance of the infringement (*Hall* v. *Holstrom*, 106 Cal.App. 563, 571 [289 P. 668]; *H. Moffat Co.* v. *Koftinow*, *supra*, 104 Cal.App.2d 560, 566).

■ Likewise untenable is the additional subsidiary claim that equitable relief should have been denied because the respondent itself was guilty of fraud and deceit; appellants' averments in this regard were either directly and categorically denied by rebuttal affidavits filed by respondent or must be deemed denied as affirmative matter set forth in appellants' answer (Code Civ. Proc. § 462). Too, we cannot say as a matter of law that the trial court should have accepted as true the allegations in appellants' pleading in preference to the averments of the verified complaint which on its face justified the issuance of a preliminary injunction (*Porters Bar Dredging Co.* v. *Beaudry*, 15 Cal.App. 751, 759 [115 P. 951]).

■ Appellants finally contend that the trial court abused

its discretion in granting the sweeping relief contained in its order. Similar claims were advanced in *Elsis* v. *Evans,* 157 Cal.App.2d 399 [321 P.2d 514], in which Mr. Presiding Justice White restated the recognized rule that the granting of a preliminary injunction embodying all the relief prayed for is not to be condemned "where proper circumstances are shown upon a proper consideration of the equities between the parties" (p. 408). Appellants, by failure to deny, admit that respondent has been and will continue to be injured by their use of a confusingly similar name. By way of contrast, the fact of injury to the appellants was and is problematical, being dependent upon a final determination that their use of their trade name and business methods was not wrongful. As respondent well puts it, there is thus presented "the choice between two tenable conclusions" which calls for the exercise of discretion in its true sense. Squarely in point are *Fresno Canal etc. Co.* v. *People's Ditch Co.,* 174 Cal. 441, 450-451 [163 P. 497] and *Williams* v. *Los Angeles Ry. Co.,* 150 Cal. 592, 596 [89 P. 330].

We find, upon a consideration of the entire record, that the trial court did not abuse its discretion and for the foregoing reasons the order appealed from is affirmed.

White, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied August 14, 1959, and appellants' petition for a hearing by the Supreme Court was denied September 16, 1959. White, J., did not participate therein.