[Civ. No. 22628. Fourth Dist., Div. One. Nov. 23, 1981.]

CALIFORNIA WESTERN SCHOOL OF LAW, Plaintiff and Respondent, v.
CALIFORNIA WESTERN UNIVERSITY, Defendant and Appellant.

**COUNSEL**

Calabro, Calabro & Calabro and Alfred A. Calabro for Defendant and Appellant.

Higgs, Fletcher & Mack, J. Tim Konold and Linda M. Woolcott for Plaintiff and Respondent.

## OPINION

**COLOGNE, J.**—California Western University (University) appeals from a judgment in a name infringement action. The court, sitting without a jury, permanently enjoined University from using a name similar to that of California Western School of Law (Law School).

University was incorporated in 1973, under the name of Tom Neal, Inc. Since July 1974, it has used the name California Western University. Its principal place of business is Santa Ana, California. University offers bachelor, masters and doctorate (but not in the subject of law) degrees.

In 1952, Balboa College in San Diego changed its name to California Western University (not the appellant and hereafter called CWU-Balboa). In 1958 Law School began operation as a graduate school of CWU-Balboa. In 1967, United States International University (USIU) merged with CWU-Balboa and continued to use the names "California Western University" and "California Western School of Law."

In September 1974, USIU (Law School's predecessor) became aware of Universisty. In October and November, USIU made written demand that University refrain from using the name of or similar to "California Western University." In December 1974, University replied it would continue to use the name "California Western University." At this time, University had spent only a few thousand dollars at most to promote and advertise its name. Neither party took further action to resolve the name dispute until Law School filed suit in January 1977.

In 1975, Law School separated from USIU and became a distinct entity, acquiring from USIU the right to use the name "California Western School of Law." It is located in San Diego, California and offers only a legal program and degree.

In 1975 and 1976, after it was informed of Law School's claimed right to use the name, University spent about $314,000 in promotion and advertising. After Law School brought this action in January 1977, and before the time of trial in October 1979, University spent about $400,000 in promotion and advertising.

 University first contends the court erred by finding the Law School's requested relief (permanent injunction) was not barred by the affirmative defense of laches. Both parties and the trial court rely on *Tustin Community Hospital, Inc.* v. *Santa Ana Community Hospital Assn.* (1979) 89 Cal.App.3d 889 [153 Cal.Rptr. 76], as the controlling California law.

*Tustin* provides an historical review of laches as a defense to an injunction in the name infringement context. It also criticizes the ambiguity in many of the prior relevant cases. The holding in *Tustin* states the better view in these cases is "the court should weigh the competing equities which bear on the issue of delay and should then grant or deny injunctive relief depending on the overall balance of those equities." (*Id.,* at p. 903.)

To balance the equities, the *Tustin* court lists factors which should be considered: "In considering that evidence, for the purpose of determining whether plaintiff has been guilty of inappropriate delay and, if so, whether it has so prejudiced defendants as to make it inequitable to grant injunctive relief, the trial court must weigh a number of factors. These will include the length of any such delay, excuses for delay, defendant's knowledge, in advance, that plaintiff was using its trade name, any actual fraud in defendants' conduct, plaintiff's acquiescence or consent, or the appearance thereof, the extent of competition between plaintiff and defendants, any prejudice to, or reliance by, defendants, possible changes in conditions during delay, the effect of delay upon the availability of evidence, alternative solutions, the effect of a granting of injunctive relief upon defendants, the effect of a denial upon plaintiff, and the impact of the parties' conduct, and of the ultimate judgment to be rendered, upon the public interest. [Citations.]" (*Tustin, supra,* 89 Cal.App.3d 889, 905.)

 The court found Law School's delay in bringing suit was two years and three months after putting University on notice of its objections. While the length of the delay is considerable and the trial court was "troubled" by that delay,[1] our courts have rejected laches as a bar in cases where there has been delay longer than two years and three

---

[1] The excuses for the delay were the Law School might be sold, thereby making moot the name infringement action, and USIU and Law School were financially ill-equipped to enter litigation. The trial court said these excuses were unpersuasive and we agree. One might reasonably expect a law school to have the awareness of the legal implications of use of its name and the legal talent to secure appropriate relief.

months (see, e.g., *Family Record Plan, Inc.* v. *Mitchell* (1959) 172 Cal.App.2d 235, 246 [342 P.2d 10] (four-year delay)). ▮ The laches that operates as a bar is measured in each case by equitable considerations, and in the case of an intentional and continuing invasion of the plaintiff's rights, the delay, in order to constitute a defense, must be such as to amount to assent or acquiescence (*Matzger* v. *Vinikow* (9th Cir. 1927) 17 F.2d 581, 583). Acquiescence by silence does not normally amount to a defense (see 4 Callmann, The Law of Unfair Competition Trademarks and Monopolies (3d ed. 1970) § 87.3(b)(2), pp. 138-144). To be distinguished is the case of *Valvoline Oil Co.* v. *Havoline Oil Co.* (S.D.N.Y. 1913) 211 F. 189, where over eight years elapsed after knowledge of the use of the competing trade name and substantial business interests had been established. Also distinguishable is *Polaroid Corporation* v. *Polarad Electronics Corp.* (2d Cir. 1961) 287 F.2d 492, where the name had been used 12 years and business expanded into an infringing area over 4 years. The equities there weighed heavily in favor of a bar as a result of the very long delay.

▮ The two-year delay here does not act to bar the action as a matter of law but can be considered as only one of the equitable considerations.

Prejudice to University is the crucial factor in this case. University claims it was prejudiced by Law School's delay in that it spent over $700,000 from inception to the time of trial to promote and advertise its name. University's brief states: "If the Law School had objected to the University's use of the name at the outset, the University would have suffered little disadvantage by changing to another name." (See, *Valvoline Oil Co.* v. *Havoline Oil Co., supra*, 211 F. 189, 195.) We find important the fact that as early as October 1974, University was fully aware of Law School's claimed exclusive right to use the "California Western" name. Although Law School delayed filing suit, it gave the University ample notice of its position before University had spent more than a few thousand dollars in promotion and advertising. "If the defendant continues his act, after due warning, he does so at his own risk." (4 Callmann, The Law of Unfair Competition Trademarks and Monopolies (3d ed 1970) § 87.3(b)(2), p. 142, citing *Winifred Warren, Inc.* v. *Turner's Gowns, Limited* (Supreme Ct. 1940) 16 N.Y.S.2d 994.) Therefore, with the exception of possibly a few thousand dollars, University spent its money with full knowledge of the claim of Law School. University could have changed to a noninfringing name before launching its advertising program, but rather assumed the risk. It would be

anomalous to permit University to create prejudice by assuming a known financial gamble and then use this prejudice as a defense against Law School's assertion of a right (cf., *Valvoline Oil Co.* v. *Havoline Oil Co., supra*, 211 F. 189, and *Polaroid Corporation* v. *Polarad Electronics Corp., supra*, 287 F.2d 492, where the delay was considerable). We find this a proper basis on which to deny claimed prejudice to University supporting laches.

In balancing the equities, the court must also weigh "the effect of a granting of injunctive relief upon defendants, the effect of a denial upon plaintiff, the impact of the parties' conduct, and of the ultimate judgment to be rendered, upón the public interest." (*Tustin, supra*, 89 Cal.App.3d 889, 905.)

The court here considered the evidence and found inter alia: Law School acquired the exclusive right to use the name of "California Western School of Law" regarding its educational facility; while University's use of the name was with good faith, the names were confusingly similar; University spent over $700,000 in advertising and promoting its programs, but had been given notice of Law School's prior use of the name; University has enrolled over 4,000 students since its inception and awarded 1,000 degrees, but Law School has approximately 2,000 graduates who earned degrees and are entitled to the protection of the integrity of their degrees; University's continued use of its name will cause additional public confusion and irreparable harm to Law School and its institution, reputation, students, faculty, alumni, contributors, the bench, bar and general public. In view of this, the court concluded an injunction should issue prohibiting University from using its or a similar name.

To reach this final conclusion, the trial court balanced the equities using the approach identified in *Tustin* and concluded the equities weighed in favor of granting the injunction. We find no error in this conclusion.

University further contends the court characterized Law School "as a sort of trustee for the prestige of the California Western School of Law" (and its student beneficiaries). University asserts this characterization caused an erroneous evaluation and denial of the laches defense. We find this contention is without merit. University pulls a one-sentence statement from context and inflates its significance. As we have discussed, we are satisfied the trial court considered all relevant factors

and applied the *Tustin* standard in finding both the absence of laches and the propriety of granting an injunction.

University next contends the court erred in finding the establishment of a secondary meaning of the words "California Western." As both parties recognize, whether a name has acquired a secondary meaning is a question of fact (*Family Record Plan, Inc.* v. *Mitchell, supra,* 172 Cal.App.2d 235, 243). ■ Even though the court listed the establishment of a secondary meaning as a conclusion of law, "'[a] conclusion of law does not lose its characteristic as such because it is placed among the findings of fact, and a finding may be regarded as one of fact although mistakenly placed among the conclusions of law.'" (*Gossman* v. *Gossman* (1942) 52 Cal.App.2d 184, 191 [126 P.2d 178].)

■ The law is clear regarding a secondary meaning for a tradename. "It is hornbook law that geographical, generic, or descriptive words may not be exclusively appropriated for the purposes of a tradename, but if the name acquires a secondary meaning, equity will grant protection appropriate to the circumstances. [Citations.] 'The phrase "secondary meaning," as thus used ... means ... a subsequent significance added to the previous meaning of the designation and becoming in the market place its usual and primary significance.... The issue ... is whether or not in fact a substantial number of present or prospective purchasers understand the designation, when used in connection with goods, services or a business, not in its primary lexicolographical sense, but as referring to a particular person or association.' (Rest., Torts, § 716, com. b.)" (*Ball* v. *American Trial Lawyers Assn.* (1971) 14 Cal.App.3d 289, 302 [92 Cal.Rptr. 228].)

■ We believe substantial evidence and the findings of fact show a substantial segment of the public has associated the "California Western" name and its derivatives with Law School. When referring to an educational institution of higher learning, this name has assumed "something more than a strict geographical meaning" in the "public mind." (*Tustin, supra,* at p. 906.) We conclude the court's finding of a secondary meaning is supported by substantial evidence.

University next contends the court erred in finding University's use of the name "California Western" caused public confusion. University states "There is no evidence to support the finding that the public interest would be adversely affected ...," and "There was no competent

evidence presented that any members of the relevant public would confuse a law school in San Diego with a university in Santa Ana."

 The rule is the court must determine (1) the likelihood of confusion (2) in the mind of a prudent person in the relevant public (3) caused by the tradename as a whole (*Ball* v. *American Trial Lawyers Assn., supra*, 14 Cal.App.3d 289, 307-310). University misstates the record, for there was evidence to support the judgment of the trial court.

Mrs. Reis, registrar of USIU, stated she had received many transcript requests and inquiries from employers asking for verification of a degree issued by California Western University. In checking the files pursuant to one such request, she discovered the student in question attended University and not USIU. Confusion was evident.

Regarding the relevant public, University contends the trial court here committed the same error as in *Ball* by narrowly limiting the relevant public to the legal community.[2]

The trial court broadly defined the relevant public as Law School's "students, prospective students, prospective faculty members, employers, clients, the academic community, college pre-law advisors, the bench and bar, and *general public*." (Italics added.) Certainly, the national advertising campaign went to a broad segment of the public. The relevant public interest was a factor considered by the court.

The court properly considered the name "California Western University" and its derivatives as a whole rather than as distinctive, segregated words.

 The likelihood of confusion is normally a question of fact (*Visser* v. *Macres* (1963) 214 Cal.App.2d 249, 254 [29 Cal.Rptr. 367]; *In re Marriage of Shelton* (1981) 118 Cal.App.3d 811, 815 [173

---

[2] In *Ball*, the court said: "In deciding the question of likelihood of confusion, the preliminary determination of what constitutes the relevant public is a material issue. We think the trial court committed legal error in confining the relevant public to 'the bench, members of the bar, law teachers, law students, and (perhaps) public officials.' ... [W]e feel that the relevant public includes that cross-section of the populace who may come into contact with the names or the respective reputations of either organization, the activities of either organization or of its respective members, or the official positions or views of either organization upon contemporary controversial legal problems. These matters are not confined to the discerning few, such as the bench, bar, law professors, and public officials." (*Ball, supra*, 14 Cal.App.3d at p. 308.)

Cal.Rptr. 629]). "In some instances, however, just the comparison of the two names themselves may be adequate to establish the likelihood of confusion. (*Academy* [*of Motion Picture, etc.* v. *Benson*] (1940) *supra*, 15 Cal.2d 685, 691 [104 P.2d 650]; *Hair* v. *McGuire, supra*, [188 Cal.App.2d 348 (10 Cal.Rptr. 414)]; Rest., Torts, § 728, com. a.) 'The Hollywood Motion Picture Academy' was held to be a name which was prima facie confusing with 'The Academy' or 'The Motion Picture Academy' by which plaintiff's organization had come to be known. (*Academy* (1940) *supra*, 15 Cal.2d 685, 691.) The name, 'Columbia Educational Institute' has been held to be confusingly similar as a matter of law with 'Columbia University.' (*Trustees of Columbia University* v. *Axenfeld* (1930) 136 Misc. 831 : . . . ) [¶] The two names, 'American College of Trial Lawyers' and 'American Trial Lawyers Association,' approximate similarity as a matter of law" (*Ball, supra*, 14 Cal.App.3d 289, 308-309)). ▮ In the present case, the court could properly conclude "California Western University" and "California Western School of Law" are confusingly similar as a matter of law. Nevertheless, Law School proved numerous instances of actual confusion from which a logical inference can be drawn that as a matter of fact continuing confusion did exist and is likely to occur in the future.

University finally contends the court erred in finding the name "California Western" had not been abandoned. This contention is plainly without merit. Substantial evidence shows California Western School of Law began operations in 1958 and from that date has used the name continuously. Since the 1960's, Law School has been accredited by the California Bar Association, the American Bar Association and the Association of American Law Schools; it regularly published two legal periodicals using the name California Western in the titles. Since 1973, it has been located at its present location in San Diego and has never given any indication of an abandonment of the use of the name. The finding that Law School did not abandon its name is supported by substantial evidence.

Judgment affirmed.

Brown (Gerald), P. J., and Staniforth, J., concurred.

A petition for a rehearing was denied December 8, 1981, and appellant's petition for a hearing by the Supreme Court was denied January 20, 1982.