HUFSTEDLER, J.
 

 Elysium, Inc. (“Elysium”), appeals from an order granting the motion of Cowles Magazines and Broadcasting, Inc. (“Cowles”), for a preliminary injunction preventing Elysium from using the name “Nude Look” as the title of its magazine on the ground that the public was likely to confuse “Nude Look” with Cowles’s “Look” magazine and to associate Cowles as publisher of 1 ‘ Look ’ ’ with the publication of ‘ ‘ Nude Look. ’ ’
 

 Elysium contends that the trial court abused its discretion in issuing the injunction because the evidence was insufficient as a matter of law to sustain a cause of action for unfair competition warranting injunctive relief.
 

 To sustain a cause of action for unfair competition in the use of a tradename justifying the issuance of an injunction, the plaintiff must prove: During prior, continuous use of plaintiff’s name or mark plaintiff’s tradename has acquired a secondary meaning; thereafter defendant used and is using a tradename which, under all of the circumstances, the purchasing public is likely to confuse with the plaintiff’s name or mark, and by reason of the deceptive appearances, the public is likely to identify the defendant’s product as that of the plaintiff or to conclude that the plaintiff has some connection with the production of
 
 the
 
 defendant’s goods or services.
 
 (Schwartz
 
 v.
 
 Slenderella Systems of Cal., Inc.
 
 (1954) 43 Cal.2d 107 [271 P.2d 857] ;
 
 Academy of Motion Picture Arts & Sciences
 
 v.
 
 Benson
 
 (1940) 15 Cal.2d 685 [104 P.2d 650]
 
 ; Fidelity Appraisal Co.
 
 v.
 
 Federal Appraisal Co.
 
 (1933) 217 Cal. 307, 309-310 [18 P.2d 950] ;
 
 Sunset House Distributing Corp.
 
 v.
 
 Coffee Dan’s, Inc.
 
 (1966) 240 Cal.App.2d 748 [50 Cal.Rptr. 49];
 
 *730
 

 Dino, Inc.
 
 v.
 
 Boreta Enterprises, Inc.
 
 (1964) 226 Cal.App.2d 336 [38 Cal.Rptr. 167];
 
 Stork Restaurant
 
 v.
 
 Sahati
 
 (9th Cir. 1948) 166 F.2d 348.)
 

 Summary of the Record
 

 The record before the trial court consisted of the following: Cowles’s verified complaint, its motion for an injunction supported by three affidavits and two declarations, and Elysium’s declaration in opposition. No other evidence was introduced upon the hearing of the motion. The sufficiency of the evidence to support the order rests therefore upon the factual statements in the affidavits and declarations, including the factual averments in Cowles’s verified complaint. Statements in the complaint, declarations and affidavits which cannot stand the tests to which oral testimony is subjected must be disregarded.
 
 (Willis
 
 v.
 
 Lauridson
 
 (1911) 161 Cal. 106, 108 [118 P. 530].)
 

 Elysium’s opposing declaration must be ignored because it consisted entirely of legal conclusions and argument. From Cowles’s verified complaint with its exhibits and from the declarations and affidavits filed in support of the motion the facts before the court were these: As owner and publisher of “Look” magazine, Cowles has used the name “Look” for its magazine continuously since October 18, 1936. During the period 1959 through the first nine months of 1964 Cowles spent over $49 million in promoting and advertising “Look” magazine. The average total net paid circulation of “Look” magazine ranged from over 5.5 million copies in 1959 to over 7.5 million copies during the first nine months of 1964. In a single promotional campaign Cowles spent between 1.5 'and 2 million dollars advertising “Look” in various news media throughout the country. Elysium began using the name “Nude Look” for its magazine some months prior to December 23, 1964, and was continuing to use that name at the date of the hearing. Cowles made a demand on Elysium in writing dated November 19, 1964, to discontinue the use of the word “Look” as a part of Elysium’s name “Nude Look.”
 

 Secondary Meaning of “Look”
 

 Generic terms or words in common usage, such as “look” are not subject to exclusive appropriation.
 
 (E.g., Academy of Motion Picture Arts & Sciences
 
 v.
 
 Benson, supra,
 
 15 Cal.2d at pp. 688, 690-691 (“academy”);
 
 Fidelity
 
 
 *731
 

 Appraisal Co.
 
 v.
 
 Federal Appraised Co., supra,
 
 217 Cal. at pp. 309-310 (“fidelity,” “federal”);
 
 American Auto. Assn.
 
 v.
 
 American Auto. Owners Assn.
 
 (1932) 216 Cal. 125, 131 [13 P.2d 707] (“American
 
 automobile”); Family Record Plan, Inc.
 
 v.
 
 Mitchell
 
 (1959) 172 Cal.App.2d 235, 243-244 [342 P.2d 10] (“family”). See also Bus. & Prof. Code, § 14242.)
 

 Protection of the use of a tradename composed of one or more words of common usage rests on proof that the name or mark has acquired a meaning other than its primary meaning. “ ‘If plaintiff proves that the name or word has been so exclusively identified with his goods or business as to have acquired a secondary meaning, so as to indicate his goods or business and his alone, he is entitled to relief against another’s deceptive use of such terms. . . .’ ”
 
 (Academy of Motion Picture Arts & Sciences
 
 v.
 
 Benson, supra,
 
 15 Cal.2d at p. 690.)
 

 The existence of a secondary meaning is a question of fact in each case.
 
 (E.g., Jackson
 
 v.
 
 Universal Int. Pictures
 
 (1950) 36 Cal.2d 116, 124 [222 P.2d 433];
 
 Family Record Plan, Inc.
 
 v.
 
 Mitchell, supra,
 
 172 Cal.App.2d at p. 243.) Pacts which are relevant in proving the existence of a secondary meaning include the duration and continuity of the use of the name
 
 (e.g., Jackson
 
 v.
 
 Universal Int. Pictures, supra; Beverly Hills Hotel Corp.
 
 v.
 
 Hilton Hotels Corp.
 
 (1955) 134 Cal.App.2d 345, 350 [285 P.2d 1012] ; Rest., Torts, § 716(b)); the extent of advertising and promotion of the name and the sums spent therefor
 
 (e.g., MacSweeney Enterprises
 
 v.
 
 Tarantino
 
 (1965) 235 Cal.App.2d 549, 551, 553 [45 Cal.Rptr. 546] ;
 
 Family Record Plan, Inc.
 
 v.
 
 Mitchell, supra,
 
 172 Cal.App.2d at pp. 243-244); sales figures showing the number of people who have purchased plaintiff’s named product
 
 (e.g., Family Record Plan, Inc.
 
 v.
 
 Mitchell, supra);
 
 and identification of plaintiff’s and defendant’s respective markets or marketing areas
 
 (e.g., Industrial Photo Service
 
 v.
 
 Kelly
 
 (1961) 198 Cal. App. 2d 665, 667 [17 Cal.Rptr. 907]).
 

 The facts set forth in Cowles’s complaint, declarations and affidavits are adequate to support the trial court’s implied finding that the name “Look” has acquired a secondary meaning in that the public has associated the word “Look” with Cowles’s magaizne. Prom this conclusion it follows that Elysium could not with impunity have called
 
 *732
 
 its magazine “Look.” It does not follow, however, that the secondary meaning attached to the word “Look” necessarily extends to all combinations of tradenames for magazines in which the word “Look” appears. The secondary meaning attached to “Look” reaches no further than is necessary to prevent public confusion between Cowles’s “Look” and the products, goods or services of someone else.
 

 Public Confusion
 

 Cowles does not contend that there is any reasonable possibility of product confusion whereby a purchaser would buy a copy of “Nude Look” thinking that he was purchasing a copy of “Look” magazine. Cowles contends, however, that the evidence was adequate to sustain the trial court’s implied finding that the public is likely to confuse the source of “Nude Look” with the source of “Look” magazine to Cowles’s detriment.
 

 The likelihood of public confusion, either of product or source, is itself a question of fact in each case. Among the relevant inquiries in resolving the question are these: (1) To what extent are the names similar, not only in the words used, but also the manner in which they are used? (2) To what extent are the names and the manner of usage dissimilar? (3) Are there factors other than physical similarities between the names and usages which contribute to an aura of deception, such as acts upon the part of a defendant calculated to enhance the appearance of similarity, or unfair or fraudulent business practices of a defendant which tended to, or did, in fact, confuse members of the public? For example: In
 
 Family Record Plan, Inc.
 
 v.
 
 Mitchell, supra,
 
 172 Cal.App.2d 235, plaintiff’s tradename “Family Record Plan” was protected from defendant’s name “Family Album Plan” where both parties were in the same business competing for the same market, and where defendant copied the format of plaintiff’s advertising brochures and where there was evidence of actual confusion between the two businesses. The defendants in
 
 MacSweeney Enterprises
 
 v.
 
 Tarantino
 
 (1951) 106 Cal.App.2d 504 [235 P.2d 266], were restrained from using the tradename “Tarantino’s Cocktail Sauce” by plaintiff owner of Tarantino’s Restaurant. The defendants, whose family name was Tarantino, had copied in their tradename the distinctive script used in the plaintiff’s tradename. In
 
 Photoplay Pub. Co.
 
 v.
 
 LaVerne Pub. Co., Inc.
 
 (3d Cir. 1921) 269 F. 730,
 
 *733
 
 plaintiff’s publication “Photoplay Magazine” was protected against the defendant’s title “Photo-Play Journal.” Both magazines concerned the same subject matter directed to the same reading audience, defendant had arranged the format of its magazine and its contents colorably to imitate plaintiff’s magazine, and there was evidence of actual confusion between the two. In the leading case
 
 Stork Restaurant
 
 v.
 
 Sahati, supra,
 
 166 F.2d 348, the plaintiff’s fanciful name “The Stork Club” for its restaurant was protected from defendant’s use of the identical name for his obscure bar. Defendant not only had used plaintiff’s exact trade-name, but also copied upon its napkins and coasters plaintiff’s distinctive insignia, a stork standing on one leg, wearing a high hat and a monocle.
 

 In this case the only evidence of similarity is that both tradenames have in common the word “Look” and both are affixed to magazines. The differences between the two publications include the following: price, frequency of publication, subject matter, typography and format. Cowles's title appears on the cover of its magazine in large, block, horizontal letters. Elysium’s title, in wholly different type, appears vertically in parallel lines, one line using the word “Nude” and the other, in equal-sized type, the word “Look.” The sample covers of “Look” display newsworthy photographs and subject-matter subtitles. The sample covers of “Nude Look” display photographs of nude women.
 

 There is in this record no evidence in addition to that supplied by a physical comparison of the names and of the covers of the two magazines from which deception or confusion could be inferred.
 

 The use of identical tradenames justifies an inference that the public is likely to confuse the two.
 
 (Hair
 
 v.
 
 McGuire
 
 (1961) 188 Cal.App.2d 348 [10 Cal.Rptr. 414] (both parties’ businesses were entitled “Credit Bureau of Palm Springs”);
 
 MacSweeney Enterprises
 
 v.
 
 Tarantino, supra,
 
 235 Cal.App.2d 549 [45 Cal.Rptr. 546] (both parties operated restaurants called “Tarantino’s”).) If the names are not identical, confusion can be inferred solely from a comparison of the names only if the names are colorably similar. Colorable similarity is not established from the fact alone that both tradenames have in common a single word. If Elysium’s tradename fixed the attention of the viewer on the word “Look” to the virtual exclusion of any other word
 
 *734
 
 or words in its title, confusing similarity might result even though the titles were not identical. Attention may thus he focused upon “Look” by the artful use of typography, design or other device
 
 (e.g., MacSweeney
 
 v.
 
 Tarantino, supra,
 
 106 Cal.App.2d 504, 508), or by the use of accompanying words which are colorless. For example, the name “The Look Journal” is deceptively similar to “Look” because the added words do not meaningfully change the key word “Look.” But the name “Stop, Look and Listen” for a hypothetical railroading magazine would not be confusingly similar to “Look,” at least in absence of typography or design which reduced words of the same quality as “Look” to negligible parts of the title. The words “Nude” and “Look” are given equal prominence on Elysium’s covers; it cannot be said that the word 11 nude ’ ’ is colorless.
 

 The evidence was insufficient as a matter of law to establish similarity between the tradenames of Cowles and Elysium to support an implied finding of the likelihood of public confusion.
 

 The order is reversed.
 

 Kaus, P. J., and Stephens, J., concurred.
 

 A petition for a rehearing was denied November 29, 1967, and the opinion and judgment were modified on November 29 and December 4, 1967. Respondent’s petition for a hearing by the Supreme Court was denied January 3, 1968.